[No 1999.  Decided August 31, 1896.]

W. W. D. TURNER, *Respondent*, v. THE GREAT NORTH-
ERN RAILWAY COMPANY, *Appellant.*

ACTION FOR DAMAGES — BILL OF PARTICULARS — CARRIERS OF PASSEN-
GERS — TICKET AGENT — BREACH OF CONTRACT OF CARRIAGE —
DAMAGES.

The refusal of the court, in an action for damages for failure to
transport plaintiff, to require plaintiff to furnish a bill of particu-
lars showing the respective amounts claimed for loss of time,
trouble, annoyance, disappointment and anxiety of mind, is not an
abuse of discretion, especially where the damages claimed are gen-
eral in their nature and are not required to be specifically alleged.

A ticket seller in a union depot, whose business it is to sell tick-
ets over various lines of railway whose trains enter and depart
therefrom, is such an agent of any company furnishing tickets to be
sold there, which are accepted by the conductors of its trains as its
tickets, that the company is bound by any of the declarations of
such ticket seller as to the running of its trains.

Passengers have a right, until otherwise informed, to rely on in-
formation received by them from ticket agents as to the arrival, de-
parture and running of trains, in answer to inquiries concerning those
matters, provided they do not disregard other reasonable means of
information.

Where a railroad company fails to fulfill its contract to carry a
passenger to a certain destination, the company is liable for the ex-
pense thereby incurred, including the cost of conveyance by other
means and also that incident to unavoidable delay.

Damages cannot be recovered for anxiety and suspense of mind
in consequence of delay caused by the fault of a common carrier in
failing to transport a passenger to his destination pursuant to con-
tract. *(Willson v. Northern Pacific R. R. Co.,* 5 Wash. 621, dis-
tinguished.)

The measure of damages for the loss of time incurred by an
attorney through failure of a railroad company to transport him, is
not what the time of practicing attorneys of his capacity is worth,
but the most trustworthy basis would be his earnings as an attorney
either before or after the particular time in question.

An instruction to the jury that, for loss of time, plaintiff, who
was an attorney, was entitled to recover such sum as his time at

home, for the period he was delayed by reason of defendant's failure to transport him, was reasonably or fairly worth in his profession, is misleading when the only proof of the value of such time was the opinion of the plaintiff and other witnesses as to what it ought to be worth; and it is also misleading in view of the further fact that it left out of consideration the probability that plaintiff would have had professional employment, had he been at home during the period of his detention.

Appeal from Superior Court, Spokane County.— Hon. JESSE ARTHUR, Judge.   Reversed.

*C. Wellington,* and *Jay H. Adams* (*M. D. Grover*, of counsel), for appellant.

*Graves & Wolf,* for respondent.

The opinion of the court was delivered by

ANDERS, J.—This was an action for damages for the failure on the part of the defendant to transport the plaintiff and his wife over its line of railway from St. Paul, Minnesota, to the city of Spokane, in accordance with its agreement and duty.

The material facts set forth in the complaint are, briefly, that the defendant is, and at all the times mentioned in the complaint, was a corporation operating a line of railway from St. Paul to Seattle by way of the city of Spokane; that on May 30, 1894, the plaintiff purchased from the agent of defendant, at St. Paul, tickets for himself and wife, and procured checks for their baggage, over the defendant's railway from St. Paul to Spokane, and was induced so to do by the representation of said agent that defendant's passenger train, which would leave St. Paul on the said day, would reach the city of Spokane on the morning of the 2d day of June following, and that the tickets purchased from the defendant's agent were limited to that time and train; that defendant then

well knew that it had not been able to run a through train from St: Paul to Spokane for several days prior to that time, and that owing to a serious break in its roadbed west of Havre, it would not be able to run such through train for a long time thereafter, which fact it negligently and fraudulently concealed from the plaintiff; that plaintiff and his wife took passage on defendant's passenger train which left St. Paul on the evening of May 30, 1894, and when said train reached Havre, the conductor thereof informed the plaintiff that because of some damage to defendant's road further west, in the state of Idaho, the train would proceed no further, but that the plaintiff and his wife would be taken on defendant's line of railway to Helena, Montana, from which place they would be carried to their destination over the line of the Northern Pacific Railroad Company, and that the tickets then held by plaintiff were good and would be honored for transportation over that road; that plaintiff arrived at Helena on June 1st, and, on the following day, boarded the first west-bound Northern Pacific train and presented his tickets to the conductor, who refused to accept them for transportation and required the plaintiff to pay the fare for himself and wife to Missoula, that being the end of the conductor's division; that owing to serious damage to that road caused by high water, plaintiff could proceed no farther, and was compelled to remain in Missoula from the second to the twentieth day of June; that on said last mentioned day plaintiff paid the fare demanded for transportation to his home at Spokane, which place he reached on the 21st day of June, having been delayed over night at Hope, Idaho, and that the expense necessarily incurred for extra railroad

fare and for board and lodging, during the delays at Helena, Missoula and Hope, was $86.20:

It is averred in the complaint that—

"During their detention and delay plaintiff's said wife, in consequence of said delay and her anxiety of mind as to their situation, became sick at said City of Missoula and was confined to her bed for several days, and plaintiff was much worried, vexed and annoyed because of his inability to make his wife comfortable, situated as they were at a hotel among strangers, far from home and without access to their baggage; that, because of said detention and delay and of his inability to reach his said home, plaintiff was greatly harrassed, troubled and perplexed about his business, and it otherwise caused him great annoyance, vexation and anxiety of mind because of his embarrassed situation, the uncertainty when they would reach their home, and the great dangers incident to traveling at that time. That in addition to said extra expense made necessary, as aforesaid, because of defendant's negligent and fraudulent conduct in the premises, and of plaintiff's delay and detention, as aforesaid, and consequent loss of time, worriment, trouble, annoyance and anxiety of mind, as aforesaid, he has been damaged in the further sum of $1,000."

The plaintiff, accordingly demanded judgment against the defendant for $1,086.20. The defendant moved the court to require the plaintiff to furnish a bill of particulars showing the respective amounts claimed for loss of time, trouble, annoyance, disappointment and anxiety of mind, which motion was denied. The defendant then answered, denying all the allegations of the complaint, except that relating to the incorporation and business of the defendant, and that the plaintiff purchased the tickets mentioned in the complaint. From a judgment in favor of the plaintiff for the sum of $750 this appeal is prosecuted.

It is claimed by defendant that it had a right, under § 205 of the Code of Procedure, to be advised, in advance, of how much plaintiff sought to recover for loss of time, how much for anxiety of mind, etc., that it might be prepared with its proofs to meet the allegations of the complaint, and that if the allegations as to loss of time, trouble, annoyance and disappointment of mind, authorized the introduction of any proof, the damages were special· and the defendant was entitled to a statement of the particular items.

It has been repeatedly held in New York, under a statute like ours, and seems to be the settled rule, that the granting or refusing of a motion for a bill of particulars is within the sound discretion of the trial court, and its ruling in that regard will not be reviewed on appeal, except in cases where there has been a palpable abuse of such discretion. *Tilton v. Beecher*, 59 N. Y. 176 (17 Am. Rep. 337); *People v. Tweed*, 63 N. Y. 194; *Dwight v. Germania Life Ins. Co.*, 84 N. Y. 493.

No such case, we apprehend, is presented here. The object of the statute is to enable a party reasonably to protect himself against surprise on the trial (*Butler v. Mann*, 9 Abb. N. C. 49); but we are unable to see how the defendant could have been surprised by the testimony adduced by the plaintiff corroborative of the averments of the complaint, to which defendant's motion for a bill of particulars was especially addressed. So far as the complaint is concerned, its allegations were sufficient to let in the evidence admitted. The damages claimed, or at least those claimed for loss of time, were general, and therefore were not required to be specifically alleged. Thompson, Carriers of Passengers, p. 550.

It appears from the testimony of plaintiff that he

purchased his tickets for transportation at the office of the Union Depot at St. Paul, and not at the office of the defendant company, and that the person from whom he purchased them was engaged in selling tickets over various other lines of railway whose trains entered and departed from that depot. Upon the trial, the court permitted the plaintiff, over the objection of defendant, to detail a conversation between himself and the ticket-seller, which occured at the time the plaintiff purchased his tickets, in which the ticket-seller stated, among other things, that defendant's trains were running through to Spokane on schedule time, and, if there were no accidents, plaintiff would arrive at his destination on the morning of June 2, 1894.

It is contended that this was error for the reason that it was not shown that the person who made these statements was an agent of the defendant, and authorized to bind it by such declarations. But, the fact that the tickets so sold were furnished by the railway company, and were accepted as its tickets by the conductors of its trains, would seem to be sufficient proof that the seller was a ticket agent of the company and therefore clothed with the usual powers of such agents.

It is generally the fact that there is no other person than the ticket agent at a railroad station who can give travelers the necessary information as to the arrival, departure and running time of trains, and the rule, as formulated by a learned text writer, is, that passengers have a right, until otherwise informed, to rely on information received by them from ticket agents, in answer to inquiries concerning those matters, provided they do not disregard other reasonable means of information. 3 Wood, Railroads (Minor's ed.), 1654.

The testimony objected to was certainly competent for the purpose of showing that the plaintiff himself was not in fault in taking the particular train on which he started home.  It was also competent as tending to prove the contract between the parties, but, for that purpose, it was comparatively unimportant in view of the fact that the tickets themselves, which were *prima facie* evidence of the defendant's contract, represented upon their face that plaintiff would be carried to his destination within the time mentioned by the ticket seller.

Objection is made by the defendant to the action of the court in permitting the respondent to state to the jury the amount he was compelled to pay for board and lodging and other necessary expenses for himself and wife while at Missoula, and it is urged, with much earnestness, that the expense incurred at that place was not the result of the breach of defendant's contract, but of an independent, intervening cause, viz., the inability of the Northern Pacific Railroad Company, upon whose line the plaintiff had become a passenger, seasonably to carry him to his destination.  The fact is, however, that the plaintiff and his wife while at Missoula were not passengers on the Northern Pacific Railroad, and the company operating that road had violated no contract with them, or duty or obligation concerning them.  It carried them safely and promptly to that place and thereby discharged its whole duty.  If plaintiff had, on arriving there, requested it immediately to convey him to Spokane, the fact that its road had been so damaged by floods and high water that it could not move its trains would have been a legal excuse for a failure to comply with such request.  The plaintiff had no right of action against the Northern Pacific

Railroad Company for damages suffered by reason of the delay at Missoula, and it therefore follows that, if the defendant is not liable therefor, the plaintiff is without remedy, and must suffer a loss occasioned by no fault on his part.

But we do not think that the plaintiff is thus remediless. It was his privilege, if not his duty, on being informed that the defendant was unable to transport him in accordance with the terms of its undertaking, to procure some other reasonable means of conveyance, and proceed on his journey. He chose what seemed to him, and apparently to the conductor of the defendant's train, to be the most direct and expeditious route, and which, so far as we are advised, was the only one practicable. The omission of the defendant to fulfill its engagement caused the plaintiff to seek transportation over the Northern Pacific Railroad, and it is therefore justly liable for the expense thereby incurred, including that incident to unavoidable delay. 3 Sutherland, Damages (2d ed.), § 936; 2 Sedgwick, Damages (8th ed.), § 864.

In answer to the question "Now Colonel, I wish you would go on and state to the jury what, if any anxiety, worriment, etc., you suffered on account of your delay, being separated from your baggage, and all of those things that are proper under the ruling of the court, in consequence of this delay?" the plaintiff was allowed, notwithstanding the defendant's objection, to testify that he was greatly worried, troubled and annoyed by the combination of circumstances surrounding him at that time, among which were that he had to pay out more money than he had contemplated paying out; that the Northern Pacific Railroad Company would not board him at Missoula as they did their passengers; that his means were limited and

he did not know how long he had to stay there; that he could not hear from home, the telegraph line being broken down; that his wife was taken sick and lay in bed three days in consequence of her worriment, and that he could not make her comfortable under the circumstances.

Damages for "worriment" and disappointment, resulting from such circumstances, are too remote to be recovered in this action. The mental anxiety of the plaintiff induced by the sickness of his wife and his inability to make her comfortable, or his limited means, or his inability to hear from home owing to the interruption of telegraphic communication, cannot be regarded as the proximate result of the alleged wrongful acts, or omissions of the defendant, and the court therefore erred in permitting this testimony to be submitted to the consideration of the jury.

The court also erred, and for the same reason, in instructing the jury generally that the plaintiff was entitled to recover for worry and mental excitement, such sum as would fairly and reasonably compensate him therefor.

" Damages will not be given for mere inconvenience and annoyance such as are felt at every disappointment of one's expectations, if there is no actual physical or mental injury." 1 Sedgwick, Damages (8th ed.), § 42.

And hence damages cannot be recovered for anxiety and suspense of mind in consequence of delay caused by the fault of a common carrier. *Triggs v. St. Louis, etc., Ry. Co.*, 74 Mo. 147, (41 Am. Rep. 305); *Hobbs v. London, etc., Ry. Co.*, L. R. 10 Q. B. 111; *Hamlin v. Great Northern Ry. Co.*, 1 Hurl. & N. 408; *Walsh v. Chicago, etc., Ry. Co.*, 42 Wis. 23 (24 Am. Rep. 376).

Nor, in an action against a railroad company for a

refusal to carry, can the plaintiff recover damages for fatigue suffered by him in walking to his place of destination, or for mental and physical suffering caused by sickness contracted in such walk. *St. Louis, etc., Ry. Co. v. Thomas*, 27 S. W. (Tex.) 419.

But it is urged by the learned counsel for plaintiff that this court in the case of *Willson v. Northern Pacific Railroad Co.*, 5 Wash. 621 (32 Pac. 468), repudiated the doctrine that damages cannot be recovered for mental suffering, which is not connected with physical injury, and that the testimony and the instruction as to mental anxiety and excitement, above mentioned, were in accordance with the principles there announced. That was an action for damages for an unlawful expulsion of a passenger from a railway train, and, while it is true that we held, in accordance with what was deemed to be the weight of authority, that the plaintiff was entitled to compensation for the sense of wrong suffered and the feeling of humiliation and disgrace occasioned by the wrongful act, we did not undertake, or intend, to announce any rule with respect to the measure of damages in a case like the one at bar. That case is clearly distinguishable on principle from this, and the decision therein, in our judgment, in no wise militates against the views we have here expressed. In the *Willson case*, the court proceeded upon the theory that humiliation and mental distress were the natural and proximate, if not in fact the necessary result, of the wrongful act of the defendant, but in the present case, the necessary element of proximity is wholly wanting. The case of *St. Louis, etc., Ry. Co. v. Berry*, 15 S. W. 48, cited by plaintiff, and which supports his contention, seems to us to be contrary to sound policy and opposed to the general current of authority.

In fact, the trial court, in one portion of its charge to the jury, recognized and announced what we hold to be the correct doctrine, when it stated to the jury that the plaintiff could not recover damages for any mental suffering experienced by reason of the refusal of the conductor of the Northern Pacific Railroad Company to accept the tickets tendered to him by plaintiff for transportation; and for what reason, then, it told the jury that the plaintiff was entitled to damages for mental anxiety and suffering endured in consequence of his delay, we are unable to perceive. Surely no court could say that, in contemplation of law, the mental agitation or excitement caused by being delayed on a journey, is of a different character from that produced by unexpectedly having to pay extra fare for transportation. The mental sensation in each case, whether it be called excitement, anxiety, annoyance or worry, is manifestly the result of disappointed hope or expectation merely, for which, as we have seen, no damages can be awarded.

It appears from the evidence that the plaintiff is an attorney-at-law and well known as such at Spokane, but that he had not been engaged in the practice of his profession for two years prior to the time when his alleged cause of action arose, and, upon the trial, he testified that he estimated the time lost, by his being delayed, to be reasonably worth the sum of $25 per day. Two other attorneys were also called as witnesses for plaintiff, one of whom stated that the services of attorneys of the ability and learning of the plaintiff, who were engaged in active practice in Spokane during the month of June, 1894, were worth from $25 to $30 per day, and the other, that they were worth from $30 to $40 per day.

All of this evidence was objected to on the alleged

ground that it was incompetent, irrelevant and imma-
terial, and it is here insisted that the court erred in
overruling the objection. Now, it is evident that, if
the plaintiff was delayed in reaching his destination
by the fault of the defendant, he was damaged, on
account of lost time, to an amount exactly equal to
that which he would have earned by the practice of
his profession (for it is as a lawyer only that he claims
damages for loss of time), had he been at home during
such delay; but, to entitle him to a recovery, it was
incumbent upon him to prove such amount by com-
petent and legal evidence.

As to the proof of damages for time lost by profes-
sional men, Mr. Sedgwick says :

"In the case of most professional men, there can be
no way of fixing a general scale of remuneration. The
exclusive services of such men cannot be measured
by any pecuniary scale common to a whole class. The
most trustworthy basis of damages in such a case is
the amount which the injured party has earned in the
past. This is, however, only evidence, from which
the jury will be enabled to say what the services of
such a man as the plaintiff are worth, and the jury
should distinctly understand that it is not to be taken
as the necessary and legal measure of damages." 1
Sedgwick, Damages, (8th ed.), § 180.

And this statement of law seems to be amply sup-
ported by the authorities.

It is apparent therefore that the "most trustworthy
basis of damages" was not adopted in the trial of this
cause. There was no proof whatever of what the
plaintiff actually earned, as an attorney, either before
or after the particular time in question. Of course
he earned nothing immediately before that time, be-
cause he had not been engaged in the practice of the
law for the preceding two years, but as he resumed

the practice of his profession immediately after his arrival at Spokane, we think it would have been proper to have shown what he earned thereafter, not as establishing in itself the value of his time, but as evidence to aid the jury in fixing it. It would even have been permissible to submit to the consideration of the jury, under proper instructions, proof of the earnings of the plaintiff when previously engaged in practicing law in the city of Spokane; but we are inclined to the opinion that it was hardly proper to prove what the time of practicing attorneys was worth, as that would constitute no fair basis of damages, where the value of a person's time depends so much upon his individual exertions.

Neither was it proper to permit the plaintiff himself to state his own opinion or " estimate " of the value of his time, without stating the facts upon which such opinion was based. Indeed, the testimony of each of the witnesses, who testified as to the value of an attorney's time, was substantially nothing more than an expression of his individual opinion upon the subject, and the question involved was not one of science or skill, such as could not be determined by a jury of ordinary intelligence, without the aid of the opinions of others. If facts only had been stated, the jury could have drawn their own conclusions. Upon this issue the jury were instructed that for loss of time, plaintiff was entitled to recover such sum as his time at home, for the period he was delayed by reason of defendant's failure to transport him, was reasonably and fairly worth in his profession or business. And as an abstract proposition of law, the instruction was correct, but as applied to the proofs it was mis-

15—15 WASH.

leading, because it virtually authorized the jury to adopt the amount stated by the plaintiff himself, or that which they might infer from the testimony of either of the other witnesses, to be the reasonable value of plaintiff's time, as the absolute and certain measure of damages. Even if it were conceded that the evidence was admissible and that it showed a " general scale of remuneration " common to all attorneys, such as the plaintiff, the instruction would still be open to the same objection, for it left out of consideration entirely the probability that plaintiff would have had professional employment had he been at home during the period of his detention. *Yonge v. Pacific Mail S. S. Co.*, 1 Cal. 353; 3 Sutherland, Damages (2d ed.), § 936; 2 Sedgwick, Damages (8th ed.), § 863.

The jury should have been distinctly charged to weigh that probability for the manifest reason that the plaintiff's right to damages, for loss of time, depended upon the fact whether the time, during which he was delayed, would have been of pecuniary value to him if he had arrived at his destination without detention. Under the instructions as given, the jury were left to determine, as best they could, the amount of damages, without being informed as to the rule by which such damages should be measured. It is difficult at best to determine the value of time in a case like this, where such value is not governed by any established rate of wages, and it is therefore highly important that the jury should be fully informed as to the rules and principles by which they should be guided.

What we have already said renders it unnecessary for us to specially consider the remaining points made by the defendant.

The judgment must be reversed and the cause remanded for a new trial.

HOYT, C. J., and GORDON, J., concur.

DUNBAR, J.—I dissent. I think no substantial error was committed by the court, and the judgment should be affirmed.