33328. RAILWAY EXPRESS AGENCY INC. *v.* MATHIS.

DECIDED MARCH 2, 1951.

*Alston, Foster, Sibley & Miller, Wheeler, Robinson & Thurmond,* for plaintiff in error.

*William P. Whelchel, Kenyon, Kenyon & Gunter,* contra.

SUTTON, C. J. Clyde Mathis sued Railway Express Agency Inc. for damages for injuries to his person and property, alleged to have been caused by the defendant's negligence. The jury found for the plaintiff, the defendant's motion for a new trial was overruled, and the defendant excepted.

The following is only a brief summary of the facts as shown by the evidence, but the evidence will be dealt with in more detail in considering the grounds of the motion for a new trial: Clyde Mathis was driving his station wagon at 11:30 p.m. on March 9, 1949, proceeding eastward along the right side of Railroad Avenue in Gainesville. The lights of his car were on. Another automobile turned into Railroad Avenue from Main Street, and proceeded toward Mathis on the other side of Railroad Avenue. The lights of that car may have prevented Mathis from seeing the defendant's truck, which was being backed into the street on the same side on which Mathis was driving, and which had been stopped by the defendant's driver to let the other car approaching pass behind it. When this other car had passed behind the truck, Mathis' station wagon struck the defendant's truck, and Mathis was injured when thrown against the steering column and windshield of his station wagon.

■ During the trial, the plaintiff's counsel called M. L. Gravitt, the driver of the defendant's truck, for cross-examination, and asked him how many trucks the defendant had in Gainesville in connection with its business. The defendant objected, and moved to exclude the answer on the ground that it would not illustrate any issue involved in the case. The plaintiff's counsel then stated, "We can identify it [the particular truck involved], but I want to show and I expect to show that they have a number of large trucks and they monopolize the area down there around the station, on the street and in the yard, with their trucks."

The defendant moved for a mistrial on the ground that it was improper to make the statement before the jury, and that there was no allegation of any such charges in the petition. The trial judge overruled this motion and admitted the testimony, after instructing the jury to disregard the statement made in connection with what counsel intended to prove by the

witness, but which was not to be considered by the jury as proof or testimony.

The witness testified that there were nine trucks used by the defendant in carrying on its business in Gainesville, and that the defendant through its servants parked its trucks in the street in front of the express office and in the space between the express office and the freight depot. The defendant objected to this testimony and moved to exclude it on the ground that there was no pleading to authorize it; that it was not illustrative of any issue in the case; that it did not show whether the defendant was negligent in any one of the ways charged in the petition; and that it was immaterial and irrelevant.

In the first special ground of the motion for a new trial, error is assigned on the court's permitting counsel for the plaintiff to make the statement above quoted, on denying the defendant's motion for a mistrial, and on overruling its objection to the admission of the testimony, because the statement by counsel for the plaintiff and the testimony admitted were irrelevant, harmful and prejudicial to the defendant, and of such a nature as to make it impossible for the defendant to obtain a fair trial at the hands of the jury.

There was no allegation or issue that more than one truck was involved in the collision, or that any other of the defendant's trucks were in the vicinity at the time of the collision. The question at issue was whether the defendant exercised ordinary care in the circumstances at the time and place of the collision, and not at other times. The evidence objected to was irrelevant to this issue and was inadmissible. See *Hollomon* v. *Hopson,* 45 *Ga. App.* 762 (8) (166 S. E. 45), and cases therein cited; *Cox* v. *Norris,* 70 *Ga. App.* 580, 584 (28 S. E. 2d, 888). The statement of the plaintiff's counsel as to what he intended to prove by this irrelevant testimony and the admission of such testimony as evidence over the objection of the defendant could have had no other effect than to prejudice the minds of the jury against the defendant, and consequently was harmful error.

■ The second special ground of the motion complains of the admission in evidence of a plat of the area in which the collision occurred, on the ground that no foundation was laid for its admission. The plat contained certain specific measure-

ments of distances, and the plaintiff did not introduce testimony that these measurements were correct, although the driver of the defendant's truck testified that the measurements were approximately correct. He also testified as follows: "I think the exhibit marked P-2 [the plat in question] correctly represents the situation down there in a general way." The court admitted the plat to show the general conditions existing at the time, and instructed the jury not to consider the measurements on the plat. No further objection was made by the defendant.

The foundation was adequate to admit the plat in evidence for the purpose stated, and no error is shown by this ground of the motion. *Moon* v. *State,* 68 *Ga.* 687 (2); *Bell* v. *State,* 71 *Ga. App.* 430 (31 S. E. 2d, 109).

■ In special ground three of the motion, the defendant assigns error on the admission of testimony to the effect that the plaintiff had a "nice personality" and was a "pretty jolly guy" before the wreck, and was "dry and abrupt" in his conversation afterwards, over the objection that the witness had not stated sufficient facts to warrant an expression of any difference in the plaintiff before and after the collision, and that there was no foundation laid for the witness to express an opinion. The witness testified only as to what he observed, and the demeanor of the plaintiff as thus observed was a matter of fact and not a matter of opinion. In *Vincent* v. *State,* 153 *Ga.* 278 (1) (112 S. E. 120), it was held that a witness's observations that a person spoke pleasantly and was in a good humor were matters of fact. This ground of the motion is without merit.

■ The fourth special ground complains of the following charge to the jury: "The statute of this State provides that every person operating a vehicle upon the highway shall observe the following traffic rules and regulations: All vehicles not in motion shall be placed with the right side as near the right side of the highway as practicable, except on city streets where traffic is obliged to move in one direction only. Now, gentlemen of the jury, when a person fails to observe that statute then that person would in law be guilty of negligence." This instruction is assigned as error for the reason, among others, that the statute was not applicable to the facts disclosed by the evidence.

The facts which appear without dispute from the plaintiff's

evidence are: that the defendant's truck was parked perpendicular to the street, but off the street and headed away from the street; that the defendant's driver backed the truck until its front wheels were at the curb and its rear end near the center of the street, at which time the driver stopped the truck to let a car approaching from his left pass behind the truck, on the unoccupied side of the street; and that the plaintiff's station wagon collided with the right side of the truck immediately after the other car had passed behind the truck.

The charge given was almost exactly in the language of the Code, § 68-303 (a), which pertains to the operation of vehicles upon the highways. The act of 1935 (Ga. L. 1935, p. 443; Code, Ann., § 68-314), which provides that it is unlawful to stop or park a motor vehicle less than eight feet from the center line of a State-aid road, is substantially similar in purpose, although different in that it applies only to State-aid roads. After the cases of *Kelly* v. *Locke,* 186 *Ga.* 620 (198 S. E. 754), and *Harwell* v. *Blue's Truck Line,* 187 *Ga.* 78 (199 S. E. 2d, 739), were decided, the act of 1935 was amended by the act of 1947, which added the following: "Provided that the provisions of this section shall not apply to temporary stops made as a normal and reasonable incident to traffic conditions existing at the time." Ga. L. 1947, p. 1505; Code (Ann. Supp.), § 68-314.

The act of 1935 as thus amended applies expressly to vehicles stopped or parked on a State-aid road, but not to temporary stops made as a normal and reasonable incident to traffic conditions existing at the time. Code § 68-303 (a) applies to vehicles "not in motion," and requires that such vehicles be placed with their right sides as near the right side of the highway as practicable. Under a reasonable construction, § 68-303 (a) should not apply to temporary stops made as a normal and reasonable incident to traffic conditions existing at the time, and the stop made by the defendant's driver in the present case was such a stop, according to the undisputed evidence in this case. In other words, the driver of the truck was backing out and stopped momentarily for another automobile to pass behind his truck. Under the charge as given, the jury would have been authorized to find the defendant negligent as a matter of law because its driver stopped to let another vehicle pass safely

behind his truck, whereas, it was properly a question for the jury to determine under the facts whether or not the defendant was negligent in this respect. The charge complained of was not applicable to the facts of this case, and the trial judge erred in giving it to the jury.

■ The fifth special ground assigns error on the following charge: "If the jury should find the plaintiff is entitled to recover on account of injury to his person, it would be the duty of the jury to determine the amount of the damage. In that connection, the court instructs that one item that is recoverable on account of injury to the person, where there is liability, is the reasonable value of the lost earnings due to such injury prior to the date of trial. If the jury should find the plaintiff has suffered injury to his person which will incapacitate him, or reduce his earning capacity for a time extending into the future, the jury would determine the extent of diminution of capacity to earn money, for how long a time the loss or diminution would continue, and the reasonable value of such lost earnings."

The defendant complains of this charge, on the grounds that it permitted the jury to speculate and guess at a profit, which the plaintiff contended that he was able to make but upon which he·submitted no evidence by which the court or jury could by any calculation with any degree of accuracy determine such profit; that it submitted to the jury the right to determine an amount of damages suffered by the plaintiff without any evidence whatever to support it; that the plaintiff had the burden of furnishing some data by which the jury might determine the extent of the loss of earning capacity, so that the jury might calculate the amount from the figures furnished and not be placed in the position where their allowance of damages for this amount would be guess work, and the charge of the court submitted to the jury an issue where it was impossible for the jury under the evidence to arrive at any amount without guessing and speculating.

The plaintiff testified that he had been making around $8500 net profit per year in his poultry business during 1948 and until the time of the collision on March 9, 1949. "I did come back to town to work the next day and until the 14th. . . I

did not make anything to amount to anything during the rest of 1949 after I was hurt. I am now working for Puritan Mills. I find now that I cannot carry on my business now as well as before the wreck. I can carry it on. My back bothered me a good deal when I ride and this job requires a good deal of riding. . . I am just not as alert on business deals as I was. My head does bother me some and I still have dizziness. I can't do things like I did. I don't know how much I can make now in business. I am working on a salary and commission basis and I don't know what it will be. . . I still have those headaches. Those headaches occur about once a week. I still have trouble with my eyes. I still have trouble and pain in my back. My neck was sore for several—well, it still is sore at times. I have not had a full night's sleep since this wreck occurred and have trouble every night waking up and can't sleep. As to my nervousness . . I just get all tore up if I get something on my mind and get to studying about business too serious or something. I cannot remember things and carry on business like I used to."

R. C. Mathis, the brother of the plaintiff, testified, "I took Clyde's business over. He was just not in any shape to run it. Clyde did not come back in there and help to run the business. He come in there but he didn't do anything. He just seemed like he was nervous and all tore up and he never did do anything. Since this wreck he has not done anything and has not made any money. It seems like he takes no interest in anything and is nervous."

Several witnesses testified that the plaintiff was a jolly, good-natured fellow before the collision, but that afterwards he was dry and abrupt in his conversation, not the type of person he used to be, quieter, distant, and that he looked as though he were sick and did not feel well.

Boyd Brown testified that the plaintiff had been working for him since the first of the year [1950]. "I have seen him several afternoons along late in the afternoon—I would say four o'clock —have seen him put his hand on his head and leave before working hours were over, actually at four o'clock, and he didn't come back that day. That has happened several times."

It will be seen that there was some evidence that the plaintiff

earned nothing during the period from the time of the collision through the rest of the year 1949. The portion of the charge quoted pertaining to the recovery of earnings lost prior to the time of the trial was authorized. But the remaining part of the charge quoted would have allowed the jury to find as the plaintiff's damages the reasonable value of his earnings lost because of his reduced earning capacity in the future.

Damages recoverable for the loss of probable future earnings must be pleaded, and proved by introducing in evidence sufficient data upon which the jury may base their finding. Although the plaintiff testified that he was employed at the time of the trial, and although his employer testified that he had been so employed since the first of the year, there was no evidence that his earnings in this employment were less than what they had been prior to the time of the collision. On its facts, this case is similar to *Berry* v. *Jowers*, 59 *Ga. App.* 24 (200 S. E. 195), wherein the plaintiff showed that she had incurred serious injuries which resulted in her losing time from work, wearing glasses, having headaches, and having to leave her work early. This court held that there was no evidence that her disabilities would or did bring about any decrease in earnings, so as to make a charge to that effect applicable. In *Atlanta Coca-Cola Bottling Co.* v. *Deal*, 66 *Ga. App.* 211 (17 S. E. 2d, 592), there was evidence that the plaintiff's use of his fingers was impaired, but that he was engaged in the same work at the time of the trial as at the time of the injury. This court held that a charge similar to the one given in the present case was inapplicable. The case of *Callaway* v. *Pickard*, 68 *Ga. App.* 637, 646 (23 S. E. 2d, 564), dealt with a charge as to diminished capacity to labor as a part of damages recoverable for pain and suffering; and in *Pollard* v. *Gammon*, 63 *Ga. App.* 852 (12 S. E. 2d, 624), there was evidence of the decreased earnings of the plaintiff. The last two cases were cited and relied on by the plaintiff, but the present case is different on its facts and is not controlled by those decisions. The evidence was insufficient to authorize the charge as to loss of future earnings, and it was error to instruct the jury that they might determine the reasonable value of such earnings.

■ Special ground six complains of the following charge of

the court on the law of comparative negligence: "If the jury should find that the plaintiff is negligent and that his own negligence contributed to his injury, and the defendant was negligent and his negligence contributed to the injury of the plaintiff, it would be the duty of the jury to determine the degree of plaintiff's negligence contributing to his injury, and the degree of defendant's negligence contributing to plaintiff's injury, and if in doing so, the jury should find the degree of negligence of the plaintiff contributing to his injury was equal to or greater than the degree of negligence attributable to the defendant causing injury to the plaintiff, the plaintiff would not be entitled to recover. However, if the jury should find that the degree of negligence attributable to the plaintiff was less than that attributable to the defendant, the plaintiff would be entitled to recover, but not the full amount of his damage. Those damages we ascertain should be reduced by the jury in proportion to the degree of negligence attributable to the plaintiff. If the jury should find the plaintiff and the defendant were equally negligent, then neither would be entitled to recover. This charge is assigned as error, because the court assumed as a fact that the plaintiff had been damaged and injured, and the charge required the jury to return a verdict in favor of the plaintiff although the plaintiff himself was guilty of negligence. The charge complained of is not subject to the criticism directed against it, and this ground of the motion for a new trial is without merit.

It is unnecessary to discuss the general grounds of the motion, as the judgment is reversed for the reasons above stated. The trial judge erred in overruling the motion for a new trial.

*Judgment reversed. Felton and Worrill, JJ., concur.*