34837. WHITTON *v.* CENTRAL OF GEORGIA RAILWAY COMPANY.

DECIDED DECEMBER 3, 1953.

*Claude V. Driver, Murphy & Murphy,* for plaintiff in error.
*Matthews, Maddox & Bell, D. B. Howe,* contra.

SUTTON, C. J. 1. In the first special ground of the motion for new trial, the plaintiff contends that the court erred in admitting in evidence a plat or map, identified as defendant's exhibit "B", representing the approach to the crossing in question from the east, over the objection that the witness identifying the plat, B. F. Griffin, could not testify that it was accurate. Griffin testified that, from his own knowledge, the map was a correct description of the crossing at the time of the collision and clearly showed the situation then existing, and that the map was substantially correct with reference to the location of the railroad and the curves in it. This was sufficient as a foundation for the admission of the plat in evidence, and it was not objectionable as being inaccurate (*Railway Express Agency* v. *Mathis,* 83 *Ga. App.* 415 (2), 63 S. E. 2d 921, and citations; *Casteel* v. *Anderson,* 89 *Ga. App.* 68, 78 S. E. 2d 831), although Griffin also tes-

tified on cross-examination that the plat had been prepared by someone else from measurements which the witness had made, and that he could not swear that the distances were correct according to scale, but that he could swear that the plat was drawn accurately according to his measurements.

2. In his second special ground, the movant complains of the admission in evidence of a speed-recorder tape, offered as the record of the speed of the train at the time and place of the collision, and identified as defendant's exhibit "A" by R. E. Watson. The objection made to this evidence was that the witness testified that he did not know how the machine operated which made the tape, and that it would take the testimony of a qualified expert to show how the machine operated or how the machine made the tape.

Joe M. White testified that, after the report of the accident on September 1, 1952, he was instructed to take the tape from the speedometer of Diesel locomotive number 137, the engine involved in the collision. The tape is kept in the engine, in front of the engineer's seat, and the tape covered the speed at which the engine was running at all times. He initialed the tape on September 1, 1952, and further testified that the purpose of the tape was to determine the speed the engineer makes in his run; that it does so by an electric device which is hooked onto the wheel and which turns the tape in the speedometer; that it has a pencil point on it to determine how fast the locomotive is running; that from the tape the speed of the engine can be determined at any particular point. He took the tape to Mr. Watson.

R. E. Watson testified that the tape was in the same condition as it was when White brought it to him, except for some marks made on it by the witness. He identified certain places on the tape which he had marked as corresponding to the 324th and 325th mile posts from Savannah, and testified that the crossing in question was 1,122 feet north of the 324th mile post, and 4,158 feet south of the 325th mile post. The locomotive's speed as recorded was about 35 miles per hour at the 325th mile post, and then decreased uniformly to a stop before reaching the 324th mile post, which point represented the crossing at which the collision occurred, according to Watson's testimony. Watson's testimony was in explanation of the tape, and the fact that he

did not know how the recording machine operated was no ground of objection to such evidence. Joe M. White had previously testified as to the method of the machine's operation, and stated that the speed of the engine could be determined at any particular point from the record made. He was not cross-examined as to how the machine operated or how it made the tape; therefore the plaintiff must have been satisfied with his testimony in these respects. The court did not err in admitting the speed-recorder tape over the objection made thereto.

3. Special ground three complains of part of the court's charge to the jury, in which the court submitted to the jury the question of whether or not the plaintiff had suffered loss or impairment of his earning capacity, as an element of his damages, although no claim was made for such damages under the pleadings and evidence in the case. The plaintiff alleged, in an amendment to his petition, that his injuries were permanent and that his capacity to labor (as distinguished from his capacity to earn money) had been permanently impaired. While this charge was erroneous as against the defendant, it gave the plaintiff the benefit of an additional claim for damages, and was not error against him but was favorable to him.

4. In special ground four, the movant contends that the court failed to charge the jury as to the correct measure of damages for impairment of capacity to labor, the measure being the enlightened consciences of fair and impartial jurors. But the court charged that this was the measure of the plaintiff's damages for pain and suffering, and the loss of ability to labor is only an element of pain and suffering. The charge was as follows: "Now, gentlemen, all items of pain and suffering may be considered. As to the amount recoverable for pain and suffering, the law declares there is no standard by which to measure its extent except the enlightened consciences of impartial jurors." In the absence of a request, it was not error to fail to charge with specific reference to the various items of damages grouped under pain and suffering, such as the impairment of one's ability to labor.

5. The jury returned a verdict for the defendant and thereby resolved in the defendant's favor the points of conflict in the evidence. The defendant's evidence tended to show that its

308

train was approaching the crossing from the north at a speed of 15 miles per hour; that the bell was ringing; that the whistle had been sounded four times over a distance of 20 car-lengths before reaching the crossing; that the plaintiff was first seen by the train crew as he came from behind an oak tree and a house some 50 feet from the tracks, from which point he skidded along the pavement of McPherson Street into the side of the engine, striking it about ten feet from the front; that the train stopped about five car-lengths beyond the crossing; and that the windows of the plaintiff's car were rolled up and the radio was playing when the train crew came back to the car. The plaintiff testified that he lived on McPherson Street about a quarter of a mile from the crossing, and had passed over the crossing about six times daily in going to and from his work over a period of three months prior to the collision; and that he applied his brakes as soon as he saw the train, but skidded into it. The collision occurred at 7:30 a.m., in daylight.

From this evidence, the jury was authorized to find that the plaintiff's negligence contributing to his own injury was equal to or greater than that of the defendant's servants, or that the plaintiff, by the exercise of ordinary care, could have avoided any negligence on the part of the defendant. The verdict for the defendant was authorized by the evidence, and the court did not err in denying the motion for new trial.

*Judgment affirmed. Felton and Quillian, JJ., concur.*