JOSEPH B. CONDRON *v.* ELIZABETH REBECCA HARL, EXECUTRIX OF THE ESTATE OF VIRGIL A. HARL, DECEASED.

No. 4186.

SEPTEMBER 20, 1962.

TSUKIYAMA, C.J., CASSIDY, WIRTZ, LEWIS AND MIZUHA, JJ.

This is an appeal by defendant from a judgment entered against her on the verdict of a jury for $18,000 general damages, as well as stipulated special damages. Defendant admitted liability for the accident, in which plaintiff's automobile was struck from behind by an automobile negligently operated by defendant's decedent. The accident occurred on May 1, 1956.

Plaintiff sought, and under the instructions given by the court we must assume he was awarded, general damages for (a) pain, suffering and disability, and (b) loss of earnings and impairment of earning capacity.

Plaintiff also sought to recover for future expenses for medical attention and hospitalization. Under the instructions these were classed as special damages, but plaintiff's counsel argued to the jury without objection that they were to be considered under the heading of general damages. We find it unnecessary to determine whether the general damages may have included an award for future medical and hospital expenses, as more fully set out below.

We first will consider Defendant's Specifications of Error Nos. 2 and 5, contending that the court should not have given Plaintiff's Instruction No. 15 submitting to the jury the matter of damages for "such loss of earnings in the past, if any, as he may have suffered," and "such loss of earnings, or impairment of earning capacity, as he can reasonably be expected to suffer in the future * * *, if any," but instead should have given Defendant's Instruction No. 17, informing the jury that "* * * there is no evidence in this case from which it could be determined that plaintiff has suffered any loss of earnings or earning capacity * * *." In conjunction therewith we will consider Specifications of Error Nos. 6 and 7, relating to certain testimony of plaintiff as set out in the ensuing discussion.

Defendant argues that the evidence was insufficient to enable the jury to make an award for loss of past or future earnings, and further argues: "This is not to say that plaintiff is not entitled to damages if his work is more difficult or painful to perform. He is entitled to such damages as general damages for pain and suffering."

There was evidence that plaintiff received injuries to the neck and upper chest, and in the lower lumbar area. However, the former cleared up in a month, and when examined by Doctor Cooper six months after the accident, plaintiff's primary discomfort was in the lumbar area. Advised at that time to wear a back brace, he did so for three weeks.

Plaintiff testified that during the months after the accident the pain in his lower back "consistently increased to the point where it was very difficult for me to lift things," that the pain "is gradually worsening," that it has affected his sleep and his physical well-being, and that he has not been able to carry on the program that he carried on before the accident.

Plaintiff was 39 years old at the time of the trial; 36 years old at the time of the accident. He is 6 feet 1½ inches tall and at the time of the trial weighed 193 pounds as compared with 190 pounds upon graduation from college. During his attendance at school and college he actively participated in athletics. Graduating from college in 1942 after majoring in business administration, he served in the Navy with the Supply Corps from 1942 to 1946. From 1946 to 1949 he was with the State Department in China as director of personnel and later as a bureau chief for the Economic Cooperation Administration. After that, and until he came to Hawaii in 1952 or 1953, he was with Jantzen Knitting Mills as advertising and promotion manager for the East Coast. Since that time he has been a manufacturer's representative,

representing two lines and for a time a third, as will appear.

As a manufacturer's representative, plaintiff has worked on commission, operating "as a wholesale function directly to retail stores," presenting to selected stores the merchandise of the manufacturers he represents, which are Jantzen, producing primarily sportswear, and William Carter Company, producing primarily infants' wear. Plaintiff also has purchased and resold merchandise to a minor extent. When plaintiff came to Hawaii he "established this business as a new business," operating as the sole proprietor, with a girl in the office.

Incidental to plaintiff's work as a manufacturer's representative has been the handling of advertising, promotion and display problems, and effecting of stock control systems, for the stores on his list of accounts. (In this matter a change has come about, as below noted.)

The individual buyers of the stores place their orders from the samples plaintiff carries. The merchandise ordered usually is shipped directly to the store ordering it. He also handles reorders.

Plaintiff has a showroom in Honolulu. Formerly, he showed merchandise at service stores as well, and on other islands. He went to Kauai, Maui and Hawaii twice a year, taking with him 8-15 sample cases weighing 35-40 pounds each. Since the accident he has not been able to go to the other islands due to his back and the difficulty of lifting. He also has stopped all major showings in the field.

Before the accident plaintiff normally worked a full six days and in addition "quite a few evenings, quite a few Sundays" to establish the business. He averaged 10-12 hours a day. Since the accident he has worked a five-and-a-half-day week and has cut down on his hours but puts in a full working day. After working into the

late afternoon he comes home tired and in pain. His injuries have "necessitated a great degree of making an old man out of me * * *." He lacks the energy or enthusiasm to do "all the extra work that should be done." He has discontinued the promotion and display work, which he considers an important part of his function, and as to advertising does "only what is absolutely essential." As to the stock control work, entailing a definite physical count of the merchandise in the store, he testified that he has had to hire temporary help for this work because it requires a great deal of lifting, bending and stooping. He has not found it economically feasible to hire people to do the advertising and promotion work.

Plaintiff testified that from the very beginning his plan had been to add as a third line that of Nani Sportswear, a wholly-owned subsidiary of Jantzen, that he did in fact add this line but due to his back condition couldn't give the time and attention required to get the work organized and gave it up after a year or so. It was shown that Nani Sportswear had been in business since December 1950, and that plaintiff was a sales representative for the company from October 1, 1956 until July 23, 1958. The president of the company testified that the relationship was severed because the company required a full time representative who would also work with the mainland representatives. We will assume, however, for the purposes of this appeal, that plaintiff's back condition did lead to the termination of his connection with the company.

Only for one year—the year 1955—was plaintiff's income prior to the accident shown. In that year he grossed $27,863.59 from his business ($24,632.32 from commissions and $3,231.27 from other sources), and after deduction of expenses and depreciation in the amount of $17,951.17 had a net profit of $9,912.42.

In 1956, the year of the accident, plaintiff continued to attend to his business throughout the year, though during the latter part of the year he did not put in as much time as formerly. In this year he grossed $27,179.32 from his business ($23,954.34 from commissions and $3,224.98 from other sources), and after deduction of expenses and depreciation in the amount of $19,319.32 had a net profit of $7,860. It will be seen that the gross was about the same but the expenses increased.

In 1957, plaintiff grossed $32,612.53 ($30,115.33 from commissions and $2,497.20 from other sources). After expenses and depreciation in the amount of $17,403.91 his net profit was $15,208.62. In 1958 he grossed $34,442.09 ($32,441.12 from commissions and $2,000.97 from other sources), had expenses and depreciation in the amount of $20,140.73, and netted $14,301.36. For 1959 the only information furnished was his commissions for the first nine months, averaging $3,085 per month. However, he testified that the tendency was for the last three months of the year to be lower.

Over objection, plaintiff testified that his physical disability since the accident has affected his income. Further, over objection, he testified to the matters which are the subject of Specifications of Error Nos. 6 and 7, to wit, that due to the pattern of distribution—store distribution — established in 1953-1955, the work done with the stores, and conditions in the nation as a whole, an "upswing of business" was logical, that "our figures should have gone ahead of the $10,000 figure in 1955," and that "it would be very reasonable to expect that we would have had an increased income for 1956 of—I can only guess what that would be—I think that there would have been $2500."

The admissibility of plaintiff's testimony that under normal conditions he should have had increased income

for 1956 over 1955 in the amount of $2,500 does not turn on his use of the word "guess." That word may be used as an expression of an enlightened opinion. *Schwenger* v. *Gaither,* 87 Cal. App. 2d 913, 198 P.2d 108; *Finnerty* v. *Darby,* 391 Pa. 300, 138 A.2d 117, 122. A more serious objection is that set out in Specification of Error No. 7, namely, that the testimony was speculative. Plaintiff was prognosticating the sales of Jantzen and Carter merchandise in Hawaii, based on the spade work done by him in the Territory and the national trend. He attributed the failure to attain this expected amount to his physical condition after the accident. But the first question is as to the acceptability of the prognostication. It was by no means shown that such prognostication could be made with reasonable certainty. See *Re Taxes Von Hamm-Young Co.,* 36 Haw. 11, 19. Plaintiff should not have been permitted to state his opinion when the record did not show that there was a basis for it. *Turner* v. *Great Northern Ry.,* 15 Wash. 213, 46 Pac. 243. Granted that an upward trend was demonstrated in 1957 and 1958, there was nothing to show that it was reasonably certain that the upturn should have been experienced in 1956. Plaintiff mentioned a national trend but failed to show that it was well established in 1956, or that it could be properly correlated with Hawaii business. *Cf., United States* v. *Boston, C. C. & N. Y. Canal Co.,* 271 Fed. 877, 886 (1st Cir.). Without such showing plaintiff's opinion was worthless, since damages cannot be recovered for a speculative loss of business. *Rainbow Island Productions, Ltd.* v. *Leong,* 44 Haw. 134, 139-143, 351 P.2d 1089, 1092-94. Subsequently, plaintiff testified to the sources of his information as to national trends, at which point defendant demanded that he qualify as an expert, which he failed to do. The trial court excluded, on the ground that the subject matter was speculative, plaintiff's opinion

as to what his income ought to have been in 1957 and later years, and the same ruling should have been made as to 1956. Specifications 6 and 7 are sustained.

Though plaintiff had higher expenses in 1956 and 1958, he failed to show how much of his increased expenses was attributable to his physical condition. We note that in 1957 his expenses were about the same. Plaintiff testified that he had to hire additional help for stock control, but did not testify to the period or amount involved. The exhibits showing the annual expenses are not self explanatory. Moreover, there is lacking proof that the increased expenditure, if any, represented a loss of earnings to plaintiff considering the picture as a whole. See *Seymour* v. *House,* 305 S.W.2d 1 (Mo.); Annot., 37 A.L.R.2d 364, 373.

Again, plaintiff testified that he stopped showings at service stores and on the other islands, but he failed to show the effect on his earnings. He adduced no evidence whatsoever that the volume of sales to the service stores and stores on other islands decreased in consequence of this change or decreased at all.

Further, plaintiff's testimony that he had to give up a third line, Nani Sportswear, which he had planned all along to add but could not handle due to his back condition, was not supported by any evidence as to the profits lost in consequence. The record does not disclose the amount of that business.

This leaves the damages for loss of earnings and impairment of earning capacity dependent entirely on plaintiff's argument that "the law exacts only the kind of proof of which the nature of the case is susceptible." *Jendrusch* v. *Abbott,* 39 Haw. 506, 509. However, it is manifest that this is the type of case which lends itself to a comparison of earnings. Annot., 63 A.L.R. 142, 154, 122 A.L.R. 297, 319, 12 A.L.R.2d 288, 305. That type of

proof was not satisfactorily made, as has been shown.

Plaintiff quotes from *Jendrusch* the statement that "evidence of prior earnings is but one of many factors bearing upon the value of impaired earning capacity resulting from a permanent injury * * *." In *Jendrusch* plaintiff showed that before being injured he had, in addition to his regular employment as a security officer, an independent business in which he netted an average of $200 a month. The record showed that he was handicapped in the pursuit of this business by an arm injury inflicted by the tortfeasors. This court noted that among the factors to be considered are the prior earnings, the nature and extent of permanent injury, and the degree. of handicap resultant therefrom, and found that all factors "were established by substantial evidence."

However, as a matter of abstract principle we agree with plaintiff's contention that loss of prior earnings is not always a required factor in establishing impairment of earning capacity. *Mazi* v. *McAnlis,* 365 Pa. 114, 74 A.2d 108; *Ostertag* v. *Bethlehem Shipbuilding Corp.,* 65 Cal. App. 2d 795, 151 P.2d 647; *Morris* v. *Cartwright,* 57 N.M. 328, 258 P.2d 719; *Baros* v. *Kazmierczwk,* 68 N.M. 421, 362 P.2d 798; *Clawson* v. *Walgreen Drug Co.,* 108 Utah 577, 162 P.2d 759; *Hoefer* v. *Last,* 221 Wis. 102, 113, 266 N.W. 196, 201. Of the two elements (a) determination of extent of impairment of earning capacity, and (b) measurement of amount of loss therefrom (15 Am. Jur., *Damages,* § 92), the proof of (b) can more readily be made in some cases while in others the proof of (a) can more readily be made. In this connection, the factors of occupation, health and condition, and avenues of occupation open to the plaintiff, also listed in *Jendrusch,* play their part. *Cf., McIver* v. *Gloria,* 140 Tex. 566, 169 S.W.2d 710, cited in *Jendrusch* v. *Abbott, supra* at 510. The present case does not lend itself to the type of proof that

might be made in the case of a manual laborer. Plaintiff's training, experience, and established line of work supply the setting for measurement of the damages. *Cf.,* Annot., 130 A.L.R. 164, 15 A.L.R.2d 418, *supra.*

This is not a case in which it can be said that the impairment of earning capacity was such that loss of earnings therefrom was reasonably certain. Rather it is a case in which the impairment of earning capacity was doubtful and proof of loss of prior earnings was required to make it reasonably certain, as in *Doelling* v. *St. Louis Public Serv. Co.,* 258 S.W.2d 244 (Mo. App.), *Diamond Rubber Co.* v. *Harryman,* 41 Colo. 415, 92 Pac. 922, *Feinsinger* v. *Bard,* 195 F.2d 45 (7th Cir.), and *Hirsch* v. *Manley,* 81 Ariz. 94, 300 P.2d 588. Inability to work as hard as formerly does not, without more, lend itself to measurement under the head of impairment of earning capacity, inasmuch as the impairment of earning capacity is too conjectural. *Clark* v. *Demars,* 102 Vt. 147, 146 Atl. 812; *Berry* v. *Jowers,* 59 Ga. App. 24, 200 S.E. 195; *Railway Express Agency* v. *Mathis,* 83 Ga. App. 415, 63 S.E.2d 921; *Feinsinger* v. *Bard, supra.*

There was evidence of difficulty in lifting and stooping but, as we have said, no evidence of the additional expense incident to that incapacity. There was evidence of inability to perform all of the functions previously performed, but no evidence of a diminishment of earnings consequent thereon. There was evidence that plaintiff always had intended to take on a third line and was unable to carry it, yet when we consider the loss of the third line we are met with the blank wall previously indicated so far as a measurable amount of loss is concerned. Accordingly, we have concluded that Plaintiff's Instruction No. 15 (Specification 2) should not have been given, and Defendant's Instruction No. 17 (Specification 5) should have been given.

We further are of the view that Plaintiff's Instruction No. 14 (Specification 1) should not have included future medical and hospital expenses, and Defendant's Instruction No. 16 (Specification 4) should have been given. The question is whether the evidence was sufficient to permit an award for future medical and hospital expenses. We are of the opinion that it was not.

The testimony was to the effect that plaintiff, on medical advice, was seeking to live with his disability, rather than to be operated upon. Surgery, it was testified, was an alternative to be considered "at such time as he felt that living with it was too burdensome." There was insufficient evidence to show with reasonable certainty that plaintiff's condition would, in future, call for an operation. Accordingly, it was error to submit to the jury the matter of an award for the expenses incident thereto. *Chicago, R. I. & G. Ry.* v. *Swan,* 130 S.W. 855 (Tex.); *Missouri, K. & T. Ry.* v. *Flood,* 70 S.W. 331 (Tex.); *Davis* v. *Midwest Dairy Products Corp.,* 58 So. 2d 741 (La.); *Rodriguez* v. *Gerontas Compania De Navegacion,* 150 F. Supp. 715, 720 (S.D.N.Y.), *aff'd,* 256 F.2d 582 (2d Cir.); *Consolidated Arizona Smelting Co.* v. *Egich,* 22 Ariz. 543, 199 Pac. 132; *Holahan* v. *McGrew,* 111 Cal. App. 430, 295 Pac. 1054; Annot., 69 A.L.R.2d 1261, 1273. For the same reason, it was error to admit evidence as to the cost of the operation over defendant's objection thereto, as set out in Specification of Error No. 8.

It is contended that even if the court erred in regard to future medical and hospital expenses such errors were not prejudicial. The court charged the jury that special damages were to include "medical and hospital expenses, past and future," and the record shows that future expenses were not included in the special damages awarded. However, we find it unnecessary to decide whether this precludes the possibility of prejudice, as the judgment is

being reversed on other grounds. Nor do we find it necessary to consider the effect of the argument made to the jury by plaintiff's counsel, without objection, wherein he classed future medical and hospital expenses as part of the general damages.

Moreover, since the verdict may have been based on elements of damage that should not have been submitted to the jury, we rest our opinion on that ground and do not decide whether the award would be excessive if based only on proper elements of damage. This disposes of Defendant's Specification No. 10, asserting that the verdict was excessive.

Specification No. 3 has to do with Plaintiff's Instruction No. 17, wherein the jury was instructed that "it is for you, the jury, using your own judgment, common sense and human experience, to estimate the monetary value of past, present and future pain, suffering and disability, if any, not to exceed $100,000 the amount claimed by plaintiff." Defendant objected to the giving of this instruction "on the ground that it contains an improper reference to the amount sued for and because of the refusal to instruct that the amount prayed for may not be considered by the jury in arriving at their verdict."

We note that the latter part of defendant's objection is not supported by the record. Defendant withdrew her Request No. 19 for an instruction that: "The allegations of the complaint as to the amount of damage plaintiff claims to have suffered are not to be considered by you in arriving at your verdict, except in this one respect, that the amount of damage claimed in the complaint does fix a maximum limit, and you are not permitted to award plaintiff more than that amount." Defendant submitted no other request along that line.

The first part of defendant's objection presents the

contention that it is error to give an instruction stating that the amount of the verdict may not exceed the amount claimed in the complaint. It is settled in this jurisdiction that such an instruction is not objectionable. *Hoffschlaeger Co.* v. *Fraga,* 290 Fed. 146 (9th Cir.), *aff'g Fraga* v. *Hoffschlaeger,* 26 Haw. 557. The amount claimed in the complaint is, however, no indication of the amount of damages—it is merely the maximum amount permissible if the evidence should warrant it. Consequently the defendant is entitled to a properly worded instruction cautioning the jury to award only such damages as the evidence warrants, irrespective of the amount claimed in the complaint. To obtain such instruction the defendant of course must submit it, but in this case did not.

Only one point remains for consideration. That is Specification No. 9, asserting that the court erred in overruling an objection that a question, put by plaintiff's attorney to plaintiff's expert witness, Dr. Cooper, with respect to the causal connection between the accident and plaintiff's back condition, was a leading question.

At the time of overruling of the objection which is the subject of the specification of error, Dr. Cooper was being examined on redirect on December 1, 1959. He had just been asked over objection three questions as to the causal connection between plaintiff's complaint and the accident, none of which had elicited the desired answer that the connection between the accident and plaintiff's complaint was established to a medical certainty. All that had been elicited was that the pain plaintiff was experiencing when examined by the doctor, and which the doctor verified, was according to plaintiff the same pain he had experienced in "a continuous train of symptoms" after the accident and not before. Pressed for the fourth time Dr. Cooper testified as set out in Specification No. 9, to wit:

"Q. And so was the connection therefore to a medical certainty established?

"MR. STIFEL: Objected to on the ground of being leading.

"MR. TRASK: The accident and the complaint.

"THE COURT: Overruled.

"A. Well, it is the only information I have to go on and I would say there is a direct connection between if his story is again bona fide."

Earlier in the trial, on direct examination on November 25, 1959, defendant's counsel, in conjunction with an objection made, stated: "* * * All that the doctor said was that there could be a connection. I think the question should be asked to the witness: Can you say with reasonable medical certainty that the condition which you discovered was caused by an accident? * * * that the condition which you discovered in Mr. Condron's back was caused by the accident of May, 1956?" Defense counsel's objection thereupon was sustained and both counsel thereafter conducted the examination of the witness as suggested by defendant's counsel.

On direct the doctor testified that, considering plaintiff's history as plaintiff told it to the witness, "it is possible to say with reasonable certainty that it [the condition verified by the doctor's examination] is a discomfort that may have arisen at the time of the accident." When objection was made that he had merely stated a possibility he was asked whether he could say that what caused the back condition was the injury in May. He then testified that by the test made by him he "was able to reproduce the same pain of which the patient complained. * * * It was the same injury." From this and other testimony it appears that he considered this a satisfactory answer to the question whether the accident caused the back con-

dition. That question, on this occasion also, was repeatedly put to him. However, when told by the court that his answer to the question should be "yes" or "no," he answered "yes."

On cross-examination on December 1, 1959, he testified:

"Q. But in order to tie up cause and effect you have to conclude that the accident of May 1 caused the rupture in L-4? [L-4 was the disc identified as the source of the pain at the time of examination.]

"A. If there is no other information, that would be the only conclusion I could draw. If his story is correct.

\*     \*     \*     \*     \*     \*

"Q. Isn't it a fact that you cannot say with reasonable medical certainty that the rupture was caused by the accident of May 1?

"A. No, I cannot say that. All I can say is the man was there, there was an incident or accident, there was resultant pain, the pain continued, I could touch the pain or find it. That is the only bridge to cross over.

\*     \*     \*     \*     \*     \*

"Q. \* \* \* it is impossible for you to state whether or not the rupture which you have described in L-4 was the result of one single accident or an accumulation of many accidents?

"A. I don't know, sir. I couldn't say it was one or many.

"Q. Would you agree with me, then, that it is impossible to say it was the result of one accident?

"A. That is correct."

The witness further agreed that "every day use of a back is a minor trauma," that "we deteriorate every day as far

as the back is concerned," and that he could not "state with certainty" that the accident of May 1, 1956 was the cause of plaintiff's condition.

Thereafter, on redirect, occurred the series of questions culminating in the question and answer first above set forth.

The allowance of leading questions is a matter for the exercise of discretion of the trial judge, whose ruling will be reversed only for prejudicial abuse of discretion. (*State* v. *Yoshino,* 45 Haw. 640, 648-49, 372 P.2d 208, 212-13; *Ciacci* v. *Woolley,* 33 Haw. 247, 255.) In this instance, the question was not only leading but also argumentative and too often repeated. However, we find no reversible error on this point. In the first place, defense counsel invited this type of questioning when he insisted that plaintiff's counsel elicit from the witness a particular form of words and the judge erroneously sustained him. See *Dzurik* v. *Tamura,* 44 Haw. 327, 359 P.2d 164. Invited error cannot be availed of. *Pataray* v. *Lee Hing,* 37 Haw. 14. Secondly, the answer merely repeated in substance what the witness had said on cross-examination when he testified that, in the absence of other information, the conclusion that the accident caused plaintiff's back condition "would be the only conclusion I could draw." The witness did not retract his further testimony on cross-examination that he could not say with certainty that the accident caused this condition. As stated in *State* v. *Cunningham,* 173 Ore. 25, 48, 144 P.2d 303, 312, the answer indicates that the witness was not led. We find no prejudice to defendant.

Reversed and remanded for a new trial as to the issue of damages.

*Richard E. Stifel* (*Anderson, Wrenn & Jenks,* of counsel) for appellant.

*Arthur K. Trask* for appellee.

My examination of the record reveals that there is sufficient substantial evidence to justify submission of the question of loss of earnings by impairment of earning capacity to the jury. This court has stated in *Jendrusch* v. *Abbott,* 39 Haw. 506, 509-10, that evidence as to factors bearing upon the value of impaired earning capacity resulting from a permanent injury need not be "clear and indubitable to entitle it to go to the jury and the law exacts only the kind of proof of which the nature of the case is susceptible. (See *Coney* v. *Lihue Plantation Co., Ltd.,* 39 Haw. 129.) Such factors include the nature and extent of permanent injury, the degree of the mental or physical handicap resulting from that injury, the age and life expectancy of the victim, the extent to which his ability to work has been affected, his prior earnings, his occupation, health and condition and the intellectual and physical avenues of occupation open to him."

From the evidence as detailed in the majority opinion, I am of the opinion that the above-enumerated factors were established by substantial evidence and enabled the jury to make a fair and reasonable estimate of the value of the plaintiff's loss of earnings or impairment of earning capacity.

Finding no prejudicial error, I would affirm.