**Phil J. HOWARTH, Appellant,**

v.

**Robert PFEIFER, Appellee.**

**No. 639.**

Supreme Court of Alaska.

Feb. 3, 1967.

Joe P. Josephson, Anchorage, for appellant.

---

5. See Supreme Ct.R. 35 quoted in note 3 supra.

Eugene F. Wiles and James K. Singleton, Jr., of Delaney, Wiles, Moore & Hayes, Anchorage, for appellee.

Before NESBETT, C. J., and DIMOND and RABINOWITZ, JJ.

DIMOND, Justice.

Following a fire which destroyed certain property in Spenard, Alaska, in 1961, appellant sought damages in this action resulting from an alleged breach of an oral contract for fire insurance and from an alleged negligent misrepresentation that fire insurance had been obtained with respect to such property. The trial court found that there was insufficient evidence of an oral contract for fire insurance for that issue to go to the jury, and directed a verdict in appellee's favor as to such issue. The issue regarding the alleged negligent misrepresentation was submitted to the jury which found in favor of appellee and against appellant. This appeal followed.

Appellant owned a 6-unit apartment building in Spenard called the Italian Village which was mortgaged to the First National Bank of Anchorage. In August, 1961 appellant entered into a written agreement to sell the property to Progressive Enterprises, Inc. Progressive agreed to pay a lump sum on execution of the contract and subsequent monthly installments until the balance of an agreed purchase price was paid. Progressive also agreed to maintain fire insurance on the buildings on the property, with the policies of insurance to "be made payable to the parties and any mortgagees as their respective interests may appear at the time of the loss." Appellant testified that at the time of the execution of the contract he agreed that Progressive would obtain new insurance with the Pfeifer Insurance Agency, instead of pro-rating the existing policies and continuing existing insurance with another agency that appellant had previously dealt with.

On September 10, 1961, before all of the agreed purchase price had been paid, the Italian Village was destroyed by fire. Although appellant had originally insured the property against loss by fire, the insurance had been cancelled at his request prior to the fire.

This action was commenced by Progressive against appellee, Robert Pfeifer, who was doing business as the Pfeifer Insurance Agency. Progressive's complaint alleged that Pfeifer had negligently failed to obtain $25,000 worth of fire insurance on the Italian Village after being requested to do so, and that Pfeifer had breached an oral contract made with Progressive to obtain such insurance. Progressive sought damages in the amount of $25,000. Subsequently, the Employers' Liability Assurance Corporation, Ltd. was named as a party defendant in a second amended complaint wherein it was alleged that Pfeifer had in fact placed fire insurance coverage for the Italian Village with Employers' prior to the fire and thus a contract for fire insurance covering the property had been entered into between Progressive and Employers' through the latter's agent, Pfeifer.

Appellant and the First National Bank of Anchorage were permitted to intervene in the action as plaintiffs. Subsequently, the trial court granted Employers' motion for summary judgment and dismissed the action as to the plaintiff, Progressive, and by stipulation the claim of the First National Bank against Pfeifer was dismissed. The parties agreed that any damages recovered by appellant would be paid jointly to appellant and the First National Bank. The effect of these actions was to leave the litigation pending with the appellant as the sole plaintiff with his complaint in intervention and with Pfeifer as the sole defendant. On this appeal we are concerned only with the third and fourth claims of appellant's complaint in intervention.

In his third claim appellant alleged that Pfeifer had entered into a contract with Progressive to obtain fire insurance on the Italian Village, payable to Progressive, appellant and the First National Bank as their respective interests appeared at the time of the loss; that Pfeifer had breached the contract by failing to obtain any insurance on

the premises; and that as a result appellant and the bank were damaged in the amount of $29,800. After all of the evidence had been presented the trial court directed a verdict in favor of Pfeifer and against appellant as to the appellant's third claim, holding that there was insufficient evidence to permit such claim to go to the jury. Appellant in his first specification of error asserts that this action by the court was error.

In determining whether error was committed in granting the motion for a directed verdict, we view the evidence in its strongest light in favor of the party against whom the motion was made, i. e., the appellant.[1] We will find error only if it appears that fair-minded men in the exercise of reasonable judgment could differ on the question of whether Pfeifer had entered into an oral contract with Progressive to obtain fire insurance and had breached the contract.[2]

The sales contract between appellant and Progressive required that Progressive obtain fire insurance for the Italian Village. At the time of the execution of the contract, Progressive told appellant that it intended to obtain such insurance from Pfeifer. Appellant testified that following this he called Pfeifer and informed him what the minimum insurance requirements were under the sales-purchase contract for the Italian

Village. Appellant further testified that on August 28, 1961 he telephoned the Pfeifer Agency and talked to Alice Stewart, the general office clerk and secretary, who told him that the insurance on the Italian Village was "bound"[3] but not written and was on Pfeifer's desk; and that he spoke to Pfeifer the next day, August 29, who assured appellant that the insurance was bound and that it was all right for appellant to cancel his existing insurance.

Assuming that the jury would have believed appellant as to what he said Alice Stewart and Pfeifer told him,[4] there arises no inference from this that Pfeifer had orally agreed with Progressive to obtain insurance coverage for the property that Progressive was purchasing from appellant. All that appellant's testimony would mean is that Alice Stewart and Pfeifer were not telling the truth or were mistaken in advising appellant that insurance coverage had been obtained or that the insurance was bound. Admittedly, no insurance was in fact obtained.[5] So the fact that Stewart and Pfeifer said that it had been obtained, if appellant's testimony is taken as true, would not mean that there had been a contract between Progressive and Pfeifer to obtain insurance, but would mean only that what they had said as to the insurance being bound was not true. In order for a con-

1. Otis Elevator Co. v. McLaney, 406 P.2d 7, 9 (Alaska 1965); Accord, Svacek v. Shelley, 359 P.2d 127, 132 (Alaska 1961).

2. Saxton v. Harris, 395 P.2d 71, 73 (Alaska 1964).

3. Pfeifer and Alice Stewart testified that to "bind" insurance means to put an insurance company on the risk or commit the company to coverage before the policy is actually written, which a licensed agent has authority to do.

4. Alice Stewart denied having talked to appellant prior to the fire. She also testified that, according to office procedure in the Pfeifer Agency, either an insurance policy or a written binder was typed in the case of all insurance coverages and that at no time did Pfeifer give her a written binder or request her to type an insurance policy for fire insurance for the Italian Village. Pfeifer admitted having

talked to appellant on the telephone on August 29, but denied having told appellant that Progressive was bound by insurance.

5. In his third claim for relief in his complaint in intervention, appellant alleges:

II.

Defendant Pfeifer entered into a contract with plaintiff Progressive Enterprises to obtain fire and rental income insurance on the above described premises payable to plaintiff Progressive Enterprises, plaintiffs Howarth and the Bank as their respective interests appeared at the time of loss.

III.

Defendant Pfeifer breached said contract by failing to obtain any insurance on said premises and as a result, plaintiff Howarth and plaintiff Bank have been damaged in the amount of $29,-800.00 to date.

tract to exist it would have to be shown that Pfeifer and Progressive had manifested their mutual assent to the formation of a contract by acts that were intentionally done.[6] Evidence of the existence of such acts is absent. There was no testimony, for example, by any person representing Progressive that arrangements for fire insurance on the property had been made with Pfeifer.

Appellant also relies upon a letter dated September 6, 1961, from Pfeifer to Burns, the president of Progressive, as suscpetible of an interpretation that Pfeifer had bound the insurance in question and was warning Progressive of an intent to cancel such insurance.[7] Pfeifer testified that the reference in the letter to certain payments being due on insurance and the reference to cancellation of policies had to do with insurance already in effect on risks other than the Italian Village. In view of this explanation and the lack of any other testimony concerning the meaning of the September 6 letter, the statement in the letter that "Al was down to see you the other day and he told me that you wanted $65,000 on the building and $15,000 on furniture and fixtures" supports only the inference that Pfeifer was aware of Progressive's need for insurance on the Italian Village, but that he had not then decided to write insurance for that particular risk. This inference is supported by the testimony of Alfred Opp, an employee of Pfeifer. Opp testified that

he had called on Progressive's president, Burns, about August 25, 1961 at Pfeifer's request following a telephone call from appellant to Pfeifer wherein appellant told Pfeifer that Burns was in the market for insurance. Opp testified that when he called on Burns the latter was very busy and said that he couldn't take time out to talk to him, but that Burns did talk about needing $65,000 on the building and $15,000 on the furniture, fixtures and equipment. Opp said that Burns did not mention anything about a loss payable to the First National Bank, stating that "our conversation was very brief and very inadequate". Opp testified that he never again spoke to Burns regarding insurance.

From the evidence presented as to the question of whether Pfeifer had entered into a contract to obtain fire insurance for the Italian Village, and viewing such evidence in a light most favorable to appellant, we conclude that fair-minded jurors could not have differed as to the conclusion of fact to be drawn from such evidence but could only have reached one conclusion— that there was no such contract entered into between Pfeifer and Progressive. A jury question, therefore, was not presented, and the court was correct in directing a verdict in Pfeifer's favor as to appellant's third claim for relief.

Appellant's next three specifications of error have to do with appellant's fourth claim for relief in his complaint in in-

---

6. Century Ins. Agency v. City Commerce Corp., 396 P.2d 80, 81 (Alaska 1964).

7. The letter read as follows:

First, let us advise you that we value your account very highly as there is no question but what you and your asso'ciates will not grow.

However, we cannot do a good insurance job for you without your cooperation. As you know, we wrote to you on the 23rd of August asking for the name of the loss payee on your new Lincoln, and to date we have had no answer. Also, we placed your insurance on one of our Budget Plans with the first payment of $172.48 due on September 1. Also, you still have a balance of $283.48 on insurance that is

not placed on the Budget Plan. Al was down to see you the other day and he told me that you wanted $65,000 on the building and $15,000 on furniture and fixtures. Also, Phil Howarth called and he claims that you should have $7200 per year rental income.

I think that you can see that we are looking for quite a few answers. Frankly Bob, we want this account and we want to do a first class job for you. Therefore, this is to advise that unless we get this straightened out by September 9 we will have no alternative but to cancel the policies and consider the case closed. We certainly do not wish to do this but we must get these policies taken care of.

tervention.[8] In his second specification of error appellant contends that the court erred in giving to the jury a certain portion of Instruction No. 3 which stated a requirement of privity of contract as an element of a case for negligent misrepresentation. Appellant is mistaken. Apparently he is referring to appellee's proposed Instruction No. 4 which was not given to the jury. Instruction No. 3, which was given, contains no reference to a requirement of privity of contract.

■ In his third specification of error, appellant contends that the court erred in advising the jury that appellant could not recover without proving by a preponderance of the evidence that appellee, Pfeifer, made a representation of fact while knowing or believing that the representation was false. This point was not further elaborated on in appellant's brief, and therefore will not be considered.[9]

■ In his fourth specification of error appellant contends that the court erred in

instructing the jury that appellant could not recover without proving by a preponderance of the evidence that appellee had an actual purposeful intent to deceive or defraud the appellant. We agree that this was error because there was no evidence from which the jury could find a deceitful intent. And we believe that such error may have been prejudicial because we cannot say that the jury's verdict may not have been different had it not been so instructed. Accordingly, a new trial must be had.

Appellant's final point is that the court erred in denying appellant's motion for a continuance based on a sudden change of counsel shortly before trial and without advance notice to appellant of such change. Since we are remanding this case for a new trial, it is unnecessary to decide this point.

Our dissenting colleague, Justice Rabinowitz, states that the majority opinion leaves unresolved questions raised by appellee in regard to appellant's fourth cause of action. The matter referred to is found in that part

---

8. Appellant's fourth claim for relief provides:

I.

Plaintiff realleges all of the allegations contained in its First Claim and further alleges:

II.

On or about August 25, 1961, Howarth told defendant Pfeifer that he, Howarth, was carrying fire insurance and rental income loss insurance in the amount of $25,000.00 on his building located at 3707 Spenard Road, Spenard, Alaska, and that he, Howarth, had entered a contract to sell said premises to plaintiff Progressive Enterprises and said contract required the purchaser to insure said premises for a minimum of $25,000.00 in fire insurance and $7,200.00 for rental income insurance and that said policies were to be made payable to plaintiff Progressive Enterprises, plaintiff Howarth, and plaintiff Bank as their respective interests appeared at the time of the loss, and Howarth asked defendant Pfeifer to notify him when the new policies were obtained so that he could cancel his existing policies.

III.

On or about August 29, 1961, defendant Pfeifer negligently stated to plain-

tiff Howarth that he, defendant Pfeifer, had obtained fire insurance and rental income insurance and the premises were 'covered.'

IV.

In reliance on defendant Pfeifer's negligent statement and assurance that he, defendant Pfeifer, had obtained a new policy and the premises were covered, plaintiff Howarth cancelled his other insurance covering said premises.

V.

Thereafter on September 10, 1961, the premises were destroyed by fire.

VI.

As a direct result of the negligence of defendant Pfeifer, plaintiff Howarth has been damaged in the amount of $29,800.00, to date.

9. We have stated a number of times that we will not consider points not briefed in accordance with the rules of this court. Williams v. DeLay, 395 P.2d 839, 847 (Alaska 1964); Alaska State Housing Authority v. Vincent, 396 P.2d 531, 533 (Alaska 1964); Thomson v. Wheeler Constr. Co., 385 P.2d 111, 114 (Alaska 1963); Pollastrine v. Severance, 375 P.2d 528, 531 (Alaska 1962); Parks v. Brown, 368 P.2d 220, 222 (Alaska 1962).

of appellee's brief entitled "The Evidence Presented At Trial Did Not Justify An Instruction On Negligent Misrepresentation". Because no such instruction was given at the trial, we believe that this issue is not before us for review and therefore decline to pass upon it at this time.

The judgment is reversed and the case remanded for a new trial in accordance with the views expressed in this opinion.

RABINOWITZ, Justice (dissenting in part).

I disagree with the conclusion reached by the court in regard to appellant's fourth cause of action.

As the majority points out, appellant's fourth cause of action is based on a claim for negligent misrepresentation. In short, appellant alleged that he relied on Pfeifer's negligent statement that fire insurance had been obtained on the premises of the Italian Village. In its opinion the majority holds that the trial court "erred in instructing the jury that appellant could not recover without proving by a preponderance of the evidence that appellee had an actual purposeful intent to deceive or defraud appellant." Left unresolved by the majority's disposition is appellee's contention that on the facts of this record appellant was not entitled to go to the jury on this cause of action. This is a question that was briefed and argued by the parties in the lower court and has been thoroughly argued by appellee in his brief before this court.[1] In Ransom v. Haner[2] it was stated:

In this connection the defendants argue that, if there are any grounds for upholding the summary judgment on their behalf, regardless of whether they are the grounds set forth by the trial judge, the judgment should be affirmed. We agree, for it is a rule of law that an appellee may urge, and the appellate court should consider in defense of a decree or judgment any matter appearing in the record, even if rejected below and even if appellee's argument may involve an attack upon the reasoning of the lower court or an insistence upon matter overlooked or ignored by it.

Although I agree with the majority's conclusion that the elements of an action for negligent misrepresentation do not include an intent to deceive or defraud, the majority's opinion leaves unanswered the question of whether, on the facts appearing in this record, appellant was entitled to reach the jury on his negligent misrepresentation cause of action. In my view the questions raised by appellee in regard to appellant's fourth cause of action should have been decided in this appeal.[3] In light of the record below, the briefs before this court, and our own prior precedents, I am of the opinion that the issues raised by appellee were properly before this court.[4]

1. At the trial counsel for appellant objected to the court's failure to instruct the jury on negligent misrepresentation.

2. 362 P.2d 282, 285 (Alaska 1961). See also our more recent decision in State v. Pete, Opinion No. 372, 420 P.2d 338, 341 (Alaska 1966), where we said:
   This position we take is consistent with our rule in civil cases that we should consider in defense of a judgment below any matter appearing in the record, even if not passed upon by the lower court.

3. These issues encompassed in part the following questions: whether privity is necessary to sustain an action for negligent misrepresentation where only pecuniary harm is shown; whether such an action can be sustained when Pfeifer's and Stewart's statements to appellant were gratuitous; and whether such an action can be maintained if the statements can be characterized as statements of opinion, not fact.

4. See this court's most recent opinion in Watts v. Seward School Bd., Opinion No. 380, 423 P.2d 678 (Alaska, December 7, 1966). Compare Island Homes, Inc. v. City of Fairbanks, Opinion No. 381, 421 P.2d 586 (Alaska, December 12, 1966).