**CITY OF FAIRBANKS, a municipal corporation, Appellant,**

v.

**Ray NESBETT, Appellee.**

No. 747.

Supreme Court of Alaska.

Oct. 23, 1967.

Robert C. Erwin, of Hughes, Thorsness & Lowe, Anchorage, for appellant.

George F. Boney, of Burr, Boney & Pease, Anchorage, Robert A. Parrish, Fairbanks, for appellee.

## OPINION

Before DIMOND and RABINO-WITZ, JJ., and SANDERS, Superior Court Judge.

SANDERS, Superior Court Judge.

Appellee instituted suit in the superior court against appellant city of Fairbanks and Joseph E. Pickens for personal injuries sustained when his motorcycle collided with Pickens' automobile.[1] Appellant's negligence was predicated upon the basis that it had parked one of its trucks in such a manner that it obstructed visibility in and about the point where the collision occurred. After trial by jury appellee received a verdict in the amount of $52,529 against appellant city of Fairbanks.[2] We have concluded that the case must be remanded to the superior court for a new trial on the damage issues only.

Briefly, the evidence showed that just prior to impact appellee was on a motorcycle proceeding south on Cushman Street in the city of Fairbanks at a speed of 20 miles per hour. At this same time defendant Pickens was traveling in an easterly direction along 17th Street with the intent to cross the south-bound lane of Cushman Street in order to make a left turn into the north-bound lane of Cushman. A city of Fairbanks truck was parked on the west side of Cushman and north of the Cushman intersection with 17th Street.[3]

Defendant Pickens testified that he pulled up to the intersection at 17th Street and Cushman and stopped. At this point appellant's truck blocked his view of the south-bound traffic lane on Cushman (north of 17th Street). Pickens further testified that after the car immediately behind him honked its horn, he (Pickens) proceeded into the intersection and when he reached the point where he could see around appellant's truck, his automobile was struck by appellee's motorcycle on its left-front fender. Appellee was thrown by the force of the impact into the oncoming lane of traffic. Pickens also testified that he had not seen appellee prior to the impact. Appellee testified that because of the location of appellant's truck he did not see the Pickens vehicle until a second before the collision took place and consequently, had no time in which to avoid the accident.

## APPELLANT'S MOTIONS FOR DIRECTED VERDICT AND JUDGMENT NOTWITHSTANDING VERDICT

Appellent's first two specifications of error assert that the trial court erred in failing to grant its motion for judgment notwithstanding verdict on the grounds that there was no evidence that any negligence on the part of the city of Fairbanks was "the proximate cause" of the accident in question. The gist of appellant's argument is that if negligent at all, its negligence was only "passive" and could not, as a matter of law, be held to be the proximate cause of the accident in question.

The standard which we have adopted for this jurisdiction is that in reviewing a lower court's rulings pertaining to motions for directed verdicts or judgments notwithstanding verdict the appellate court views the evidence in its strongest light most favorable to the non-moving party.[4] In such cases the appellate court

1. Joseph E. Pickens is not a party to this appeal. The superior court jury returned a verdict in defendant Pickens' favor against appellee.

2. In the final judgment which was entered upon this verdict, appellee was also awarded $6,109.20 in attorneys' fees and $993.15 in costs.

3. The evidence is conflicting as to the truck's location in regard to the intersection and as to whether any portion of it was on the hard surface of Cushman Street. The evidence was also conflicting as to whether there were any signs or blinking lights which indicated the truck's position.

4. Howarth v. Pfeifer, 423 P.2d 680, 682 (Alaska 1967); Mallonee v. Finch, 413 P.2d 159, 160 (Alaska 1966); Otis Elevator Co. v. McLaney, 406 P.2d 7, 9 (Alaska 1965).

applies an objective test in determining whether or not fair-minded men in the exercise of reasonable judgment could differ. If there is room for diversity of opinion among reasonable men, then the question is one for the jury to decide.[5]

■ Thus, in the case at bar we view the evidence in its strongest light most favorable to appellee in determining whether fair-minded men in the exercise of reasonable judgment could differ as to whether or not any negligence on appellant's part was more likely than not a substantial factor in bringing about appellee's injury, and whether or not defendant Pickens' conduct was a superseding cause relieving appellant city from liability.

In addition to defendant Pickens' testimony that the city truck blocked his view of south-bound traffic coming down Cushman, appellee testified that he was proceeding south on Cushman at approximately 20 miles per hour; that he saw the city truck parked on the right side of the road at the intersection; that he did not see anybody around the truck and there were no "Men Working" signs; that there was a normal amount of traffic approaching him on the opposite lane on Cushman, and that there was no time for him to do anything before colliding with the Pickens car as he could not turn left to avoid hitting Pickens without turning into the oncoming traffic. He testified he did not have time to use his brakes to stop, and it would have been impossible to make a sharp right turn in the short space between the end of the truck and the side of Pickens' car.

In her deposition, Exie L. Hogan testified that she was traveling north on Cushman in her vehicle and that she observed the motorcycle, Pickens' car, and the city truck. The city truck was parked on the west side of Cushman facing north, and was on the pavement "a little bit." She

said that the Pickens car and motorcycle hit in the middle of the highway. She did not observe anything unusual about the speed of the motorcycle. She applied her brakes and pulled to the right completely off the pavement to keep from being in the accident. She stated that had the city truck not been parked where it was there was nothing that could have blocked appellee's or Pickens' view of each other. She saw no signs posted by the city indicating anything in the nature of work in progress, and she saw no workmen in the vicinity of the intersection prior to the accident.

Witness Thomas Taylor testified that he was driving an automobile on 17th Street behind the Pickens vehicle. He stated that the city truck was parked on an angle right at the corner of Cushman and 17th and Pickens had to pull around the truck to see out on the highway. He stated that he did not see the motorcycle prior to the accident since he could not see around the city truck. He further testified that he did not see any warning signs or blinker lights around the city truck and that he had sounded his horn at Pickens to go ahead.

Joseph Rampy, a truck driver employed by the city of Fairbanks on the day of the accident, testified that the city truck was parked on Cushman, 80 feet from the intersection, and that he had moved the truck to 17th Street a short while before the accident occurred. Other city employees testified concerning warning signals, blinking lights, and the reason for moving the city truck.

■ In our view the evidence we have outlined leaves room for diversity of opinion among reasonable men as to whether or not any negligence on the part of appellant was a substantial factor in bringing about appellee's injury. It is not necessary for the actor's conduct to be "the" legal cause of an injury for liability to

---

5. Bertram v. Harris, 423 P.2d 909, 919 (Alaska 1967); National Bank v. McHugh, 416 P.2d 239, 242 (Alaska 1966); Saxton v. Harris, 395 P.2d 71, 73 (Alaska 1964); McCoy v. Alaska Brick Co., 389 P.2d 1009, 1010 (Alaska 1964).

attach to the actor. It is only necessary that such conduct be "a" legal cause.[6]

We are also of the opinion that the record discloses a basis for diversity of opinion among reasonable men as to whether Pickens' actions constituted a superseding, or intervening cause which would relieve appellant of liability.[7] The jury was properly instructed as to the meaning of proximate cause, the effect of intervening conduct on the part of another person, and the burden of proof required.[8]

In the case now before this court, there are disputed facts concerning this proximate cause issue. We believe that reasonable men might differ as to whether the position of appellant's parked truck was a proximate cause of appellee's injury, and thus the question was properly submitted to the jury for resolution.[9] There was substantial evidence from which the jury could have determined that appellant's negligence was a proximate cause of the accident and appellee's injuries. The trial court did not err in overruling appellant's motions for directed verdict and judgment notwithstanding verdict.

## AS TO CONTRIBUTORY NEGLIGENCE

In regard to the liability issues, appellant urges that the lower court committed reversible error in not permitting its witness, Jimmy H. Jones, to state his expert opinion as to the comparative stopping capabilities of an automobile and a motorcycle. During a conference which was held outside the jury's presence, appellant's counsel stated, in effect, that the testimony in question would show that due to a difference in weight distribution between a car and a motorcycle, faster stops could be achieved on a motorcycle and that an experienced motorcyclist could stop in a given distance at a given speed; whereas, an inexperienced motorcyclist must drive at a slower speed to stop in the same distance. Apparently, the inference that appellant wanted to convey to the jury was that, since appellee had testified that there was not time to stop after he saw Pickens' car and before the collision, that he had not tried to stop; whereas, an experienced motorcyclist would have realized he could have stopped and would have attempted to do so, and that an inexperienced motorcyclist, such as appellee, should have been traveling at a slower speed.

█ The determination of the qualifications of an expert witness and the admission in evidence of opinion testimony are matters which lie within the sound discretion of the trial judge and such determina-

6. Restatement (Second) of Torts § 430, comment d (1965).

7. 1 D. Blashfield, Automobile Law & Practice § 53.5, at 377–382 (3d ed. 1965) (footnotes omitted):
 A proximate cause may be assisted or accelerated by other incidental and ancillary matters, without breaking the course of causation, and there may be a succession of intermediate causes, each depending on the one preceding it, and all so connected with the primary cause as to be, in legal contemplation, the proximate result thereof.
 An intervening cause, which will interrupt or break the causal connection between the negligent act relied on as a cause of action or a defense and the injury for which suit is brought, must be one not produced by the alleged wrongful act or omission, or one which is not the natural and probable consequence of such act or omission. It must be of such a nature that it could not reasonably have been anticipated or foreseen by the actor responsible for the first cause, and it must prevent the natural and probable result of the original act or omission and produce a different result, not reasonably to be anticipated.

8. In this appeal appellant does not question the correctness of these instructions.

9. Cardona v. Toczydlowski, 35 Ill.App.2d 11, 180 N.E.2d 709, 713 (1962); Boese v. Love, 300 S.W.2d 453, 458–459 (Mo. 1957); Karlsen v. Jack, 80 Nev. 201, 391 P.2d 319, 321–322 (1964); Graves v. Shippey, 215 Or. 616, 300 P.2d 442, 337 P.2d 347, 351 (1959). All of these cases involved parked vehicles—proximate cause issues.

tions are reviewable only for abuse of discretion.[10]

The testimony as to Jones' skill was that he rode motorcycles as a teenager and for several years during that time participated in "unofficial races." In the last few years his experience with motorcycles had been "just occasionally, maybe once or twice a year." He had not maintained a continued technical interest in motorcycles. The witness presented no uniform charts and admitted he had never conducted experiments on stopping characteristics.

Jones' testimony was further objected to on the grounds that it was not relevant. Defendant Pickens stated that he never saw the motorcycle until the collision. There was no other testimony that appellee saw or could have seen the vehicle before the impact. Under these facts there would be some question as to the relevancy of testimony on the stopping characteristics of a motorcycle since appellee's unrebutted testimony was that "there was just barely enough time to even reach for the brakes." In view of all the evidence relating to this specification of error, we are of the opinion that the trial judge did not commit an abuse of discretion by virtue of his refusal to permit the witness Jones to testify as an expert.

As to the issue of liability in general and contributory negligence in particular, appellant asserts two additional specifications of error. First, appellant argues that the superior court erred in not giving its requested instruction pertaining to the duty of a driver of a motor vehicle.[11] In our opinion the court's instruction relating to the duty of a driver adequately covered the subject of appellant's proposed instruction on this point.[12] Appellant's proposed instruction could not have added to the instructions which were given to the jury, and thus appellant was not prejudiced by the trial court's rejection of its proposed instruction.

Additionally, appellant contends that its proposed instruction number 17 should have been given.[13] Appellant contends that this instruction went to the issue of contributory negligence and the court's failure to give this instruction deprived the appellant of "reasonable consideration" by the jury of this defense. We hold that the superior court's refusal to give this instruction was not error. We believe that the substance of this requested instruction was adequately covered by the instructions which were given by the court.[14]

10. Pedersen v. State, 420 P.2d 327, 335 (Alaska 1966); Crawford v. Rogers, 406 P.2d 189, 192 (Alaska 1965).

11. Appellant's proposed instruction number 16 reads as follows:
 You are instructed that it is the duty of every operator of a motor vehicle as he operates his vehicle along a street or highway to exercise ordinary care to keep a careful lookout ahead of and about him. This calls for the reasonable and effective use of the driver's sense of sight in a diligent effort to observe timely not only the presence, location and movement of other vehicles but also the condition of the roadway ahead of him and his position on the roadway.

12. The instruction which the trial court gave to the jury reads:
 In determining whether or not a person was negligent, you are further instructed that it is the duty of the driver of any vehicle to exercise ordinary care to avoid placing himself or another person in danger; to use like care to avoid an accident from which injury might result; keeping a lookout for traffic and other conditions to be reasonably anticipated; and to keep the vehicle under control in order to avoid a collision with any person or with any other object that would be anticipated by an ordinarily prudent driver in like position.

13. This proposed instruction of appellant's reads:
 You are instructed that general human experience supports the inference that when one in possession of his faculties looks in the direction of an object clearly visible, he sees it.

14. Veal v. Newlin, Inc., 367 P.2d 155, 156 (Alaska 1961).

## ISSUES TO BE TRIED
## UPON REMAND

One other issue pertaining to liability remains to be discussed. As we indicated earlier, we believe that the case must be remanded to the superior court for a new trial limited only to issues concerning damages. In its brief before this court, and in oral argument, appellant urges that in the event we find reversible error in regard to the damage issues, there should be a complete retrial of both liability and damage issues, and that the new trial should not be limited to the issues of damages alone.

Civil Rule 59(a) provides in part that:

A new trial may be granted * * * on all or part of the issues in an action in which there has been a trial by jury * * * if required in the interest of justice.[15]

 Although this rule of procedure pertains to the authority of trial courts to grant partial new trials, this court possesses equivalent authority to order a partial new trial upon remand. Our review of the entire record in this case convinces us that a partial new trial limited solely to the issues of damages will not result in an injustice to appellant. In our view the liability issues were properly decided; they were distinct from the damage issues, and there is no indication from the record that the verdict was possibly a compromise verdict.[16] Under such circumstances we deem it appro-priate to limit the new trial which is to be held to exclusively damage issues.

## AS TO DAMAGES

At the time of the accident, September 4, 1962, appellee was 23 years of age, an active person, and employed in a temporary position on a survey crew during the summer before his second year in law school. He testified that at that time he was working approximately ten hours per day and six days per week, receiving $4.25 per hour with time and one-half for those hours over 40 hours per week. At this rate he was earning approximately $1,200 per month. Appellee testified that, during the summers prior to the summer of the accident, he had worked on the Alaska Railroad, on a survey crew, and on a fishing boat; but that, during the summer after his ankle injury, he was unable to work on a fishing boat or a survey crew. He further testified that during the summer of 1963 he was employed as a law clerk earning approximately $500 per month and that he took that position because he did not believe he was physically able to go out in a fishing boat. He stated that he fished in the summer of 1964 but said, in effect, that, although he had made a profit, he did not consider the fishing operation profitable for that summer. He also stated that after his graduation from law school he went to work for a law firm and was, at the time of the trial, receiving gross pay

---

15. This rule is substantially similar to Rule 59(a), Federal Rules of Civil Procedure. In Yates v. Dann, 11 F.R.D. 386, 392–393 (D.Del.1951), it was stated that the federal rule was "intended to prevent the retrial of any issue already properly decided, and to limit any new trial only to those issues which are incorrectly decided or not decided at all."

See also Supreme Court Rule 51(b) which provides:

The supreme court may affirm, modify, vacate, set aside or reverse any judgment, decree, decision or order of a court lawfully brought before it for review, and may remand the cause and direct the entry of such appropriate judgment, decree or order, or require such further proceedings to be had as may be just under the circumstances.

16. In most of the authorities relied upon by appellant in support of his argument here, it appears that the basis for requiring a retrial of all issues was that the juries had reached compromise verdicts. See Leipert v. Honold, 39 Cal.2d 462, 247 P.2d 324, 29 A.L.R.2d 1185 (1952); Hallford v. Schumacher, 323 P.2d 989 (Okl.1958); Hanisch v. Body, 77 S.D. 265, 90 N.W.2d 924 (1958); Lofgren v. Western Wash. Corp. of Seventh Day Adventists, 65 Wash.2d 144, 396 P.2d 139 (1964).

of $950 per month and had received a $3,000 bonus in December before the trial. His average monthly salary for the year 1965, the year before the trial, was $1,200, the same monthly salary he was receiving at the time of the accident.

Appellee further testified that he was in various hip and leg casts from September 4, 1962, through December of that year. He walked with crutches for several weeks after the casts were removed, and used a cane intermittently until June 1963.

There was evidence that appellee was a very active person who enjoyed participation in athletic activities, outdoor life, and hunting. As a result of this injury he has been unable to participate in any sports, hunting, or outdoor activities. He was commissioned as a reserve officer in the United States Army but could not serve on active duty and was retired because of the ankle injury. He testified that if he could not use his ankle to hunt, fish, and climb mountains he would be unable to enjoy that portion of his life which he regarded as important as the practice of law.

From the record before us it is undisputed that appellee has sustained permanent damage to his ankle. As to the evidence in this regard, as well as to the need for future surgery, testimony of three medical experts was presented. Dr. George Wichman testified in relation to abnormality of the ankle joint that "fusion of the joint might be necessary." Dr. Paul B. Haggland testified that, on the basis of his examination of appellee's ankle and x-rays taken almost two years after the accident occurred, it was his opinion that the present disability would not improve and "that it may give more trouble with activity and may necessitate, at some future time, possibly a surgical procedure."

A deposition of Dr. John F. Wiltberger was read in evidence. Dr. Wiltberger testified that he had performed an open reduction on appellee's ankle in September 1962, had inserted a surgical screw to hold the fracture in place, and had x-rayed the ankle several months thereafter. He stated that in his opinion the x-rays indicated an early osteoarthritic change and may require an ankle fusion for alleviation of appellee's discomfort.

As to appellee's activities, he testified that prior to the accident he hunted for sheep, moose, duck, caribou, bear, seal, and fished. That subsequent to an initial healing period of the ankle he enjoyed several months in which the condition of his ankle improved; and after that time it again began to give him pain when he used it for short periods and particularly when walking on a hillside or up a flight of stairs. He testified that in his practice as a lawyer, walking was his most strenuous exercise. He further stated that he had used a pedometer which measured eight miles walked during the course of one research project, after which his ankle was swollen and hurt.

At the trial evidence was introduced as to the nature of appellee's injury and the resulting disability. Competent medical witnesses testified that the injury was permanent and deteriorating. Three physicians testified that a foreign element—a three-inch surgical screw—had been inserted into appellee's ankle.

In light of the foregoing record pertaining to damages, the trial court instructed the jury as to certain "items of claimed detriment" for which they could compensate appellee if they found the same were proved, by a preponderance of the evidence, to have been proximately caused by the accident. Initially, the jury was instructed that they could award appellee for past "pain, discomfort, fears, anxiety, inconvenience, restriction of activity aside from earning capacity and other mental and emotional distress" and any such "like detriment * * * reasonably certain" to be suffered in the future. The jury was then instructed as to damages for loss of time and/or wages from the date of the injury to the date of the trial. The court then gave the jury a separate instruction to the effect that it could compensate ap-

pellee if it found the injury "set into motion an arthritic condition."[17]

The trial court next instructed the jury in regard to impairment of future earning capacity and future medical expenses.[18] Appellant contends that there was no evidence of impairment of earning capacity which would justify instructing the jury on that element of damages.[19] As we stated previously, we are in agreement with appellant's position and hold that the evidence in this case did not justify the submission of the issue of impairment of earning capacity to the jury.

In reaching the conclusion that on this record the trial judge erred in instructing the jury as to the element of impairment

of future earning capacity, we reject appellee's argument to the effect that the jury was free to determine this element of damage from facts and inferences concerning the general nature of the injury.

In our view the Hanna v. Stoll[20] and Henne v. Balick[21] line of cases are more persuasive than those relied upon by appellee and represent the better rule in this area. In *Henne* a law student was involved in an automobile accident and as a result he suffered disfigurement and impairment of his sense of smell, as well as severe, recurring headaches. At the time of trial the plaintiff was a practicing attorney. In rejecting an argument based on Connolly v. Pre-Mixed Concrete Co.[22] that impair-

---

17. These three instructions we have mentioned are not in issue in this appeal.

18. In regard to future medical damages, the court's full instruction reads as follows:

If you find for the plaintiff on the question of liability, and if you find from the evidence that the plaintiff sustained a fracture of the ankle as a direct and proximate result of the occurrence in question, and if you further find from the evidence that a pin was inserted in said bone which will require removal in the future, then, if you so find, in assessing damages you may consider the expense of the surgery, the pain and suffering to be experienced, if any, the length of the period of disability, if any, and the loss of earnings, if any, which plaintiff will sustain as a result of the period of disability.

If you further find from the evidence that fusion of the bone by surgery was required, then, if you so find, in assessing damages you may consider the expense of the surgery, the pain and suffering to be experienced, if any, the length of the period of disability, if any, and the loss of earnings, if any, which plaintiff will sustain as a result of the period of disability.

If you find that there is a deformity at or near the site of the fracture, then, if you so find you may consider the evidence relative to the deformity and the cause of same. In considering this element of the case, you should first consider whether the plaintiff was guilty of any negligence which caused the deformity or prevented normal healing. If you should so find from the evidence, then the defendant would not be liable for the results of said negligence, if any there was.

If you find that the plaintiff was not guilty of any negligence which caused the deformity or prevented normal healing, and if you find for the plaintiff on the question of liability, then, in assessing plaintiff's damages you should consider; (1) the location of the deformity and the cosmetic effect of same, if any, (2) the pain and suffering experienced by plaintiff, if any, (3) the effect of said deformity on plaintiff's occupation, his family life, his social life and his recreational activities, if any, (4) Medical expenses, past and future, if any, which are a direct and proximate result of said injury, and (5) you may consider any further evidence that may assist you in returning a fair and impartial verdict.

19. Civil Rule 49(c) authorizes the trial court to submit interrogatories to the jury "upon one or more issues of fact the decision of which is necessary to a verdict." This was not done in this case.

20. 112 Ohio St. 344, 147 N.E. 339, 341–342 (1925) (citations omitted).

21. 1 Storey 369, 51 Del. 369, 146 A.2d 394, 396 (1958).

22. 49 Cal.2d 483, 319 P.2d 343, 346 (1957). In *Connolly* a champion tennis player suffered a leg injury which ended her professional career. In affirming the award of damages, the court said:

Loss of earning power is an element of general damages which can be inferred from the nature of the injury, without proof of actual earnings or in-

ment of earning capacity could be found regardless of any evidence of earnings, the court said:

> The law does not permit a recovery of damages which is merely speculative or conjectural. * * * As a general rule, it refuses to allow a plaintiff damages relating to the future consequences of a tortious injury unless the proofs establish with reasonable probability the nature and extent of those consequences. * * * There must be some reasonable basis upon which a jury may estimate with a fair degree of certainty the probable loss which plaintiff will sustain in order to enable it to make an intelligent determination of the extent of this loss. * * The burden is upon the plaintiff to furnish such proof. If he fails in this respect, the jury cannot supply the omission by speculation or conjecture. * * The fact that there is some uncertainty as to plaintiff's damage or the fact that the damage is very difficult to measure will not preclude a jury from determining its value. * * * But this does not mean that there need be no proof at all as to plaintiff's earning capacity. Plaintiff must at least offer some evidence of loss of earnings in the future as a result of his permanent injury and, if possible, the nature and extent of his loss. * * *

We do not agree with the contention of plaintiff that the mere showing of permanent injuries, such as plaintiff sustained in this case, is, of itself, under the circumstances of this case, sufficient evidence of the extent of the impairment of plaintiff's future earning capacity. To support a finding of a specific sum as damages there should generally be other evidence than that which merely shows the nature of plaintiff's injuries and his vocation. * * * Viewing the record in the light most favorable to plaintiff, we feel that plaintiff has failed to produce any evidence showing his future loss of earnings or any other evidence from which such a finding by a jury would naturally flow. While, of course, the amount of plaintiff's loss as to future earnings could not have been fixed with the same degree of certainty as was possible in the case of past earnings, nevertheless, some tangible evidence relating to the extent of plaintiff's loss of future earnings should and probably could have been produced.[23]

In Hanna v. Stoll [24] a physician was injured when his automobile was struck by a bus. Evidence of his earnings at the time of injury was introduced but no evidence was produced as to his subsequent earnings. The court found that the jury could not base an award for impairment of earning capacity on the evidence and in so doing said:

> This is a question of considerable importance in this case for the reason that the plaintiff was a physician and surgeon, and, in view of the fact that his physical injuries were comparatively slight, it

come either before or after the injury, and damages in this respect are awarded for the loss of ability thereafter to earn money.

The theory that impairment of earning capacity can be inferred from the general nature of the injuries has been applied in cases of injuries to infants. Capriotti v. Beck, 264 Minn. 39, 117 N.W. 2d 563, 569 (1962); Hembree v. Southard, 339 P.2d 771, 777–778 (Okl.1959); Doremus v. Atlantic Coast Line R.R., 242 S.C. 123, 130 S.E.2d 370 (1963). Similarly, the same theory has been applied in cases involving injuries to housewives. Florida Greyhound Lines, Inc. v. Jones, 60 So.2d 396 (Fla.1952); Wil-

son v. Sorge, 256 Minn. 125, 97 N.W.2d 477 (1959). See Baylor v. Tyrrell, 177 Neb. 812, 131 N.W.2d 393, 401 (1964) (retired plaintiff).

23. Accord, Coles v. Spence, 202 A.2d 569, 570–571 (Del.1964); Bartholf v. Baker, 71 So.2d 480, 485 (Fla.1954); Condron v. Harl, 46 Hawaii 66, 374 P.2d 613, 618–619 (1962); Honeycutt v. Wabash R.R., 313 S.W.2d 214, 218–219 (Mo.App.), rev'd on other grounds, 355 U.S. 424, 78 S.Ct. 393, 2 L.Ed.2d 380 (1958); Schwab v. Allou Corp., 177 Neb. 342, 128 N.W.2d 835, 842–843 (1964).

24. 112 Ohio St. 344, 147 N.E. 339, 341–342 (1925).

seems quite clear that the jury must have allowed him a very substantial sum as damages for the loss of earning capacity. The evidence in the record discloses that the plaintiff was 54 years of age and in the active practice of his profession, in which he had been engaged for 30 years. He was left-handed, and the evidence tended to show that a piece of glass embedded in the palm of his left hand had severed the tendon of the index finger, making it permanently impossible to fully flex that finger, which would materially interfere with the practice of his profession, making it difficult, if not impossible, to do certain things required of a general practitioner of medicine and surgery. It is contended, however, by counsel for defendant that in order to recover for loss of earning capacity it was absolutely essential to adduce evidence showing plaintiff's earning capacity, so that the difference between his earning capacity before and after the accident could be determined; that such damages are special damages and to be recovered must be specially pleaded and proven.

\* \* \* \* \* \*

The authorities referred to indicate that such rule is applied somewhat strictly in cases where a professional man is seeking to recover damages for loss of earning capacity. In this case, concededly, there was no evidence whatever which could furnish a basis for a determination of the loss incurred by plaintiff by reason of the impairment of his earning capacity, which for the reasons above

indicated must have been a very material factor in the determination of the verdict awarded him.[25]

▉▉▉▉ Impairment of earning capacity means the permanent diminution of the ability to earn money.[26] The determination of award of impairment of future earning capacity involves two distinct considerations, namely, determination of the extent of an earning capacity and the measurement of loss therefrom.[27] In determining the extent of impairment of an attorney's earning capacity and the measurement of loss therefrom, we hold that there must be evidence presented to the jury concerning the extent of impairment. In our view this is not an instance where the jury could have determined the extent of impairment of appellee's earning capacity from the nature of his injuries and occupation and by the use of its own common knowledge and experience.[28] In short, we are of the opinion that the record is devoid of evidence that appellee's capacity to earn money has been impaired. We hold, therefore, that it was error to submit this issue to the jury since they could only have speculated as to the extent of any impairment of appellee's capacity to earn money and the resulting monetary loss therefrom.

▉▉▉ One other area of contention in this appeal remains to be disposed of. Appellant also argues that the court erred in instructing the jury that it could award damages for future surgery, the cost of future surgery, loss of earnings, and pain and suffering as a result of future surgery, and other future medical expenses.[29]

25. See Lashin v. Corcoran, 146 Conn. 512, 152 A.2d 639, 641 (1950); Wilson v. Sorge, 256 Minn. 125, 97 N.W.2d 477, 484 (1959) (concurring opinion).

26. Thomas v. Whiteside, 421 P.2d 449, 451 (Mont.1966); Murray v. Mossman, 52 Wash.2d 885, 329 P.2d 1089, 1092 (1958); Restatement of Torts § 906, comment c at 550 (1939).

27. Condron v. Harl, 46 Hawaii 66, 374 P. 2d 613, 618 (1962). See Coll v. Sherry, 29 N.J. 166, 148 A.2d 481, 487 (1959).

28. 3 Personal Injury § 3.04 [4] [a] [iv], at 132–35 (1965). Compare Saslow v. Rexford, 395 P.2d 36, 42–43 (Alaska 1964).

29. We have set out the entire text of the court's instruction in note 18, supra. Note that in the last paragraph of this instruction the jury was informed that it could consider the effect of appellee's "deformity" upon his "occupation."

Appellant's broad contention in regard to these damages is that there was no evidence upon which the jury could have based its award. Appellant further contends that the evidence must indicate to a reasonable certainty that these damages will occur.[30] More specifically, appellant contends that the instruction was erroneous because it did not inform the jury that it could only make an award for future surgery where there was evidence of the need for such surgery and evidence of the cost of such surgery.

In light of our holding in regard to the impairment of earning capacity issue and the new trial ordered thereunder, we find it unnecessary to decide the questions raised as to future medical damages. Nevertheless, we deem the following comments appropriate. Such elements of damages which appellant now questions are required to be proven to a reasonable certainty that they will occur in the future. From our study of the record, we are of the opinion that upon retrial it is within appellee's power to produce more specific and detailed evidence as to the type of operation, or operations, that appellee will have to undergo in the future; as to the costs of such operation, or operations, and any hospitalization related thereto; as to the pain and suffering connected therewith; and as to the length of any period of disability flowing from the surgical procedures.[31]

In light of the foregoing the judgment entered below is vacated and the cause remanded for a new trial limited solely to the determination of appellee's damages.

30. Appellant cites this court's decision in Saslow v. Rexford, 395 P.2d 36, 42 (Alaska 1964), where it was said:
 While instruction No. 30 is not expressed in the most artful of language, it can be reasonably interpreted in the manner contended for by the plaintiff, namely, that the jury could award only damages which were reasonably certain to result from the injury, and that the possibility of decreased earning capacity was one factor to be considered.

31. Carraco Oil Co. v. Morhain, 380 P.2d 957 (Okl.1963). In Henderson v. Breesman, 77 Ariz. 256, 269 P.2d 1059, 1061–1062 (1954), the court said:
 [T]he jury cannot be allowed to speculate or guess in making allowance for future medical expenses; there must be some data furnished the jury upon which it might reasonably estimate the amount to be allowed for this item.