Wallace O. TELLER, Appellant,

v.

ANCHORAGE ASPHALT PAVING CO., INC., Appellee.

No. 2272.

Supreme Court of Alaska.

Jan. 8, 1976.

**178** 

James K. Tallman, Anchorage, for appellant.

Daniel A. Gerety, of Delaney, Wiles, Moore, Hayes & Reitman, Inc., Anchorage, for appellee.

## OPINION

Before RABINOWITZ, C. J., and CONNOR, ERWIN, BOOCHEVER and BURKE, JJ.

BURKE, Justice.

On July 13, 1971, appellant's fourteen-year-old son and namesake, Wallace O. Teller, Jr., was fatally injured when his motorcycle was involved in a collision with a heavy gravel truck. The truck was driven by Harley Cornett, an employee of appellee Anchorage Asphalt Paving Co., Inc.

Seeking damages for his son's injuries and death, appellant filed an action in the superior court against Anchorage Asphalt[1] alleging that its employee, Cornett, was negligent in the operation of his vehicle.[2]

Anchorage Asphalt, in its answer to the complaint, denied that Cornett was negligent and alleged, as an affirmative defense, contributory negligence on the part of Wallace O. Teller, Jr.

Both parties demanded a trial by jury, which began on May 8, 1974. Following appellant's presentation of his case in chief, Anchorage Asphalt moved for a directed verdict.[3] The trial judge, after considering the evidence, granted the motion. Thereafter, over appellant's objection, formal findings of fact and conclusions of law were entered, followed by a judgment in favor of Anchorage Asphalt. Wallace O. Teller appealed.

The accident occurred near milepost 169 on the Sterling Highway, a few miles west of Homer, Alaska. In the vicinity of the accident the highway consists of two paved traffic lanes separated by a broken centerline. Additional lines mark the outer boundary of each traffic lane. The roadway is relatively straight and level. Both vehicles were proceeding west.

Wallace O. Teller, Jr., was on a pleasure ride from the Homer Spit, where he and his family were camping. Before departing their camp site the boy had informed his parents that he intended to ride his motorcycle to a gravel side road that enters the Sterling Highway from the north some thirty feet west of where his body was found after the accident. His stated intention was to turn around at that point and return to the Homer Spit. Harley Cornett,

---

1. The registered owner of the truck, Terminal Facilities, Inc., doing business as De Jong Trucking Co., was also named as a defendant. At this time we are not concerned with the disposition of appellant's claim against De Jong.

2. Cornett was not made a party to the action.

3. When the motion was made, Anchorage Asphalt's attorney described it, rather ambiguously, as one "for involuntary dismissal or directed verdict". We view the motion as one for a directed verdict, as provided in Rule 50(a), Alaska Rules of Civil Procedure.

*See O'Brien v. Westinghouse Electric Corp.,* 293 F.2d 1 (3rd Cir. 1961). Having decided to treat the motion as a motion for a directed verdict we find it unnecessary to pass on various points raised by appellant concerning the scope and applicability of Rule 41(b), Alaska Rules of Civil Procedure, governing motions for involuntary dismissal. It should be noted that we are in the process of promulgating an amendment to Rule 41(b). The purpose of this amendment is to make clear that Rule 41(b) is applicable to non-jury proceedings only.

having completed his day's work, hauling gravel from Anchor Point to the Homer area, for use on a paving project being conducted by appellee, was returning his empty truck to Anchor Point where he planned to leave it for the night. The collision occurred when Cornett attempted to pass the motorcycle.

Harley Cornett testified [4] that he first observed the motorcycle and its rider as he rounded a curve and entered upon a straight stretch. The motorcycle was ahead of him, near the right hand side of the road, approximately one foot from the line marking the north edge of the westbound lane. Cornett, according to his testimony, sounded his air horn and pulled into the left hand lane to pass, after first making sure that there was no oncoming traffic. He stated that as he pulled alongside the other vehicle he glanced down and observed the boy, with his head down, moving left toward the truck. Cornett testified that he pulled his own vehicle further to the left in order to avoid a collision, going off the pavement onto the south or left hand shoulder of the highway, and that at that point he heard the boy strike the truck. He stopped immediately, after pulling back across the road, and returned to where the boy was lying. He was sure that the wheels of the truck never passed over the body of the boy. Tire tracks were observed on the south shoulder of the road opposite where the accident occurred.

The boy was found lying in a ditch off the north or right hand side of the road. His head was nine feet from the edge of the pavement. He had numerous broken bones and serious internal injuries. Despite all efforts to save him, he died a few hours later at Providence Hospital in Anchorage. The motorcycle was lying beside him, a few feet toward Homer. Its left handlebar was bent down and there was extensive damage to its rear end. Such damage included broken reflectors and tail lights made of amber and red plastic. Its front wheel rested partly on the pavement while its rear wheel was three and one-half feet off the pavement in the direction of a ditch running along the north side of the roadway. Lines or scuffmarks, apparently made by the motorcycle, were observed on the ground extending back approximately six feet toward Homer.

Several small spots were observed on the pavement having the appearance of fresh oil. One such spot was located forty-five feet to the east of where the motorcycle was found, thirty inches from the north or right hand side of the pavement. Similar spots appeared between there and the motorcycle, all less than thirty inches from the edge of the pavement. Cornett testified that he recalled seeing another spot left of the centerline, back from where the motorcycle was found. The location of that spot is not shown in any of the photographs or diagrams of the accident scene, nor could it be recalled by any other witness.

Pieces of red and amber plastic from the broken tail lights and reflectors on the motorcycle were found in the right hand traffic lane and on the north shoulder of the road, in the general vicinity of the oil spots.

A helmet worn by the Teller boy had streaks on its left rear surface having the appearance of yellow paint. Cornett's truck was painted yellow and there was a dent on the front fender approximately the same distance above the ground as the Teller boy's head would have been if sitting on his motorcycle in an upright position. There was additional evidence of impact on a fuel tank located on the right side of the truck.

---

4. Cornett's testimony was presented in the form of a deposition, taken prior to trial and read into the record in the presence of the jury.

The speed limit in the vicinity of the accident was sixty miles per hour. According to the markings on the highway it was lawful to overtake and pass another vehicle.

Don Maxon, Chief of Police of the City of Homer, was called to the scene shortly after the accident. He observed the location of the boy's body, the debris and other items of physical evidence described above and prepared a diagram of the scene which was introduced at trial (Appendix). At trial Maxon was permitted to express an opinion as to how the accident occurred, based on his own observations and the statements of the witnesses, including Harley Cornett, the only eyewitness to testify. Maxon testified that in his opinion the point of impact was near the center of the roadway, that Harley Cornett did nothing to contribute to the accident, and that the Teller boy failed to yield the right of way.

The main argument between the parties centers around the location of the point of impact. Appellant argues, *inter alia*: that the location of the debris and oil spots, the nature and location of the damage to the two vehicles, the position of the boy and motorcycle after the accident, the damage to and marks on the boy's helmet, and the nature and extent of his injuries, all indicate that Wallace O. Teller, Jr., was struck from the rear, in the right hand or westbound lane, and that, therefore, there was evidence of negligence on the part of Cornett. Anchorage Asphalt, on the other hand, argues that the facts relied on by appellant are incomplete in that they ignore substantial portions of the testimony of Harley Cornett and the investigating officer.

In reviewing a lower court's rulings pertaining to motions for directed verdict we are required to view the evidence in the light most favorable to the non-moving party,[5] and to afford him the benefit of all inferences which the evidence fairly supports.[6] Moreover,

It is well established that the proper role of this court, on review of motions for directed verdict . . ., is not to weigh conflicting evidence or judge the credibility of the witnesses, but is rather to determine whether the evidence, when viewed in the light most favorable to the non-moving party, is such that reasonable men could not differ in their judgment. [footnote omitted][7]

In such cases the appellate court applies an objective test[8] and if there is room for diversity of opinion among reasonable people, then the question is one for the jury to decide.[9] In other words, a jury question, or question of fact, exists whenever it can be said that from the evidence and all reasonable inferences to be drawn therefrom, fair minded people in the exercise of reasonable judgment could reach differing conclusions on the issue in controversy.[10]

5. *Holiday Inns of America, Inc. v. Peck,* 520 P.2d 87 (Alaska 1974); *Breitkreutz v. Baker,* 514 P.2d 17 (Alaska 1973); *City of Fairbanks v. Nesbett,* 432 P.2d 607 (Alaska 1967); *Howarth v. Pfeifer,* 423 P.2d 680 (Alaska 1967); *Mallonee v. Finch,* 413 P.2d 159 (Alaska 1966); *Otis Elevator Company v. McLaney,* 406 P.2d 7 (Alaska 1965).

6. *Breitkreutz v. Baker,* 514 P.2d 17 (Alaska 1973).

7. *Holiday Inns of America, Inc. v. Peck,* 520 P.2d 87, 92 (Alaska 1974).

8. *City of Fairbanks v. Nesbett,* 432 P.2d 607, 609–610 (Alaska 1967).

9. *Id.* at 610.

10. *See City of Fairbanks v. Nesbett,* 432 P.2d 607 (Alaska 1967); *Bertram v. Harris,* 423 P.2d 909 (Alaska 1967); *National Bank of Alaska v. McHugh,* 416 P.2d 239 (Alaska 1966); *Mallonee v. Finch,* 413 P.2d 159 (Alaska 1966); *Otis Elevator Company v. McLaney,* 406 P.2d 7 (Alaska 1965); *Saxton v. Harris,* 395 P.2d 71 (Alaska 1964); *McCoy v. Alaska Brick Co.,* 389 P.2d 1009 (Alaska 1964).

As previously indicated the superior court entered formal findings of fact in connection with its decision to grant a directed verdict in favor of Anchorage Asphalt. In reaching our own decision we consider the following findings of fact to be particularly significant:

8. Chief of Police Maxon is a credible witness.

\* \* \* \* \* \*

12. Chief of Police Maxon found from his investigation that the probable point of impact between the motorcycle and the truck was at the center of the road and that Wallace O. Teller, Jr., had failed to yield the right-of-way.

\* \* \* \* \* \*

14. Harley Cornett sounded his horn and moved to the left to pass Wallace O. Teller, Jr., and Wallace O. Teller, Jr., moved toward the left into the path of the truck.

15. Harley Cornett did not see Wallace O. Teller, Jr., give any signal.

16. Harley Cornett attempted to avoid the collision and drove his truck off the shoulder of the road on his left.

\* \* \* \* \* \*

20. Harley Cornett's testimony is credible.

21. The probable point of impact between the truck and the motorcycle was at the center of the road.

22. Wallace O. Teller, Jr., failed to yield the right-of-way.

23. Wallace O. Teller, Jr., was negligent.

24. Plaintiff presented no facts or witnesses to establish negligence on behalf of Harley Cornett.

25. Harley Cornett was not negligent.

26. Wallace O. Teller, Jr., was not struck on the right hand side of the roadway.

\* \* \* \* \* \*

It is quite apparent that in reaching his decision the trial judge did not apply an objective standard. Instead, he chose to weigh the evidence for himself, and to determine the credibility of the witnesses. Having done so, he concluded that there was no evidence of negligence on the part of Cornett and that there was negligence on the part of Wallace O. Teller, Jr. His conclusion was obviously based largely upon his belief that the accident occurred in the manner described by Cornett.[11]

We are of the opinion that reasonable people given the same evidence could reach differing conclusions on the issues in controversy. We detect a substantial conflict between Cornett's version of how the accident occurred and the inferences that could be reasonably drawn from the other evidence in the case, when such evidence is viewed in the light most favorable to appellant. Given the location of the debris from the motorcycle, the presence and location of what appeared to be fresh oil spots on the pavement, the position of the boy's body and the motorcycle after the accident, the nature and location of the damage to the two vehicles, and the damage to and marks seen on the boy's helmet, reasonable people could infer that the collision occurred in the right hand or westbound lane when Cornett overtook and struck Wallace O. Teller, Jr., from the rear, rather than in the manner described by Cornett. Such evidence, we believe, gave rise to a jury question both on the issue of Cornett's negligence and the negligence, if any, of Wallace O. Teller, Jr. Accordingly we hold that it was error to direct a verdict in favor of Anchorage Asphalt.

11. Even if the trial judge was acting under Rule 41(b), Alaska Rules of Civil Procedure, he should have applied an objective standard, using the same test as he would on a motion for directed verdict under Rule 50(a). *Rogge v. Weaver*, 368 P.2d 810 (Alaska 1962).

Having reached this conclusion we find it unnecessary to address the other points raised on appeal, except to note that the doctrine of comparative negligence will apply to all further proceedings in this case.[12]

Reversed and remanded for a new trial.

## APPENDIX

12. *Kaatz v. State*, 540 P.2d 1037 (Alaska 1975).